352 So.2d 1252 (1977)
ACCREDITED BOND AGENCIES, INC., a Corporation, and Accredited Surety and Casualty Company, Inc., a Corporation, Appellants,
v.
GULF INSURANCE COMPANY, a Corporation, Appellee.
No. DD-332.
District Court of Appeal of Florida, First District.
December 15, 1977.
Rehearing Denied January 6, 1978.
James L. Harrison of Harrison & Snyder, Jacksonville, for appellants.
*1253 Charles T. Boyd, Jr., of Boyd, Jenerette, Leemis & Staas, Jacksonville, for appellee.
RAWLS, Acting Chief Judge.
The sole issue in this appeal is whether or not Gulf Insurance Company (Gulf) had a duty to defend an action sounding in tort instituted by the Smiths against Accredited Bond Agencies, Inc., (Accredited) and Herman Lee Duggs (Duggs).
Identification of the parties involved is necessary. Accredited issues bail bonds and in this endeavor utilizes local "agents".[1] Duggs operated a local bail bonding agency in Jacksonville, Florida, and issued a bond, underwritten by Accredited, on behalf of one of the Smiths. Personal liability coverage[2] was purchased by Accredited from Gulf; the policy specifying two locations in Orlando, Florida. The Smith suit against Accredited and Duggs alleged negligence on Accredited's part in employing and in continuing the employment of Duggs, and that Duggs, acting as Accredited's agent, committed an unwarranted and aggravated assault and battery upon one of the minor Smiths after wrongful entry into the Smith residence. It is the latter allegation that Accredited contends required Gulf to defend the Smith suit. Doubting its obligation to defend, Gulf initiated the instant declaratory action, alleging that no insurance coverage existed for the following reasons: 1) Accredited never contracted for nor paid any premium for coverage to Duggs nor for any damages that might be assessed against them arising out of any activities of Duggs; 2) the persons insured did not include Duggs nor any activities of Duggs that might occasion damages being assessed against Accredited; 3) the allegations contained in the complaint against Accredited and Duggs fell within the exclusions contained in the policy; and 4) Duggs was an independent contractor and thus Accredited was not responsible for the activities of Duggs.
In this non-jury trial, Gulf presented evidence reflecting that, pursuant to the provisions of the policy, it had no duty to defend the Smith suit against Accredited and Duggs. This evidence included Duggs' statement which reflected that he operated a bail bonding agency under the name of "Duggs' Bonding Agency"; that he was unincorporated, operated his business from his own office in Jacksonville, and was neither an officer, director nor stockholder of Accredited; and that his sole connection with Accredited was based upon its underwriting the bonds that he wrote.
In its final declaratory judgment, the trial court held that Duggs was an independent contractor, not an employee of Accredited, and that, therefore, the Gulf insurance policy issued to Accredited did not provide coverage for the facts set forth in the Smith complaint and Gulf was under no obligation to defend Accredited.
Count I of the Smiths' amended complaint alleged an employment relationship between Duggs and Accredited while alleging, further, that Duggs had accosted one of the Smith minors in the doorway to the Smith home by thrusting a pistol against his stomach in a threatening and menacing manner. It appears clear that the acts and conduct complained of within the Smith complaint fall within the coverage provided under the Personal Injury Liability Endorsement. If proven, the alleged acts constituted an offense consistent with the coverage provided under "I  Group C".
The general rule is that a liability insurance carrier must defend its insured if the initial pleadings fairly bring the case within the scope of coverage, even though ultimately it is determined that there is no liability. Tennessee Corporation v. Lamb Brothers Const. Co., 265 So.2d 533 (Fla. 2nd DCA 1972). The insurer's duty to defend *1254 its insured is governed solely by the allegations of the complaint against the insured and not by ultimate determination of liability. Bennett v. Fidelity & Casualty Company of New York, 132 So.2d 788 (Fla. 1st DCA 1961); St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973); and Garden Sanctuary, Inc. v. Insurance Co. of No. Amer., 292 So.2d 75 (Fla. 2nd DCA 1974).
In the instant case, the Gulf policy contained a clause stating:
"... the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ..."
The personal injury liability insurance endorsement to the policy afforded coverage, inter alia, resulting from the "Wrongful Entry or Eviction or other Invasion of Private Occupancy".
It is our view that, pursuant to the subject policy of insurance as compared to the allegations of the complaint, Accredited was clearly entitled to a defense by Gulf in the Smith proceeding. We are not at this stage concerned with the question of liability on Gulf's part. The sole question is restricted to Gulf's duty to defend its insured.
REVERSED.
SMITH and ERVIN, JJ., concur.
NOTES
[1] Accredited uses 130 to 140 such "agents" throughout Florida.
[2] The policy provided coverage for:

"A. False Arrest, Detention or Imprisonment, or Malicious Prosecution... .
B. Libel, Slander, Defamation or Violation of Right of Privacy
.....
C. Wrongful Entry or Eviction or other Invasion of Right of Private Occupancy... ."