487 So.2d 1051 (1986)
PIONEER NATIONAL TITLE INSURANCE CO., Petitioner,
v.
FOURTH COMMERCE PROPERTIES CORP., Respondent.
No. 66712.
Supreme Court of Florida.
April 24, 1986.
*1052 Robert T. Scott of Gunster, Yoakley, Criser & Stewart, Palm Beach, for petitioner.
J.A. Plisco, Palm Beach, and Larry Klein of Klein & Beranek, West Palm Beach, for respondent.
Paul J. Stichler, Orlando, amicus curiae for Attys.' Title Ins. Fund.
Peter Guarisco, Tallahassee, amicus curiae for Florida Land Title Ass'n, Inc.
ADKINS, Justice.
In construing the mortgagee title insurance policy before it in Fourth Commerce Properties Corp. v. Pioneer National Title Insurance Co., 463 So.2d 307, 309 (Fla. 4th DCA 1984), the court found that the insurer's duty to defend "all litigation consisting of ... defenses ... interposed against a foreclosure of the insured mortgage" had been triggered by a junior lienor/defendant's general denial of that count of the complaint stating that the mortgage had been executed and delivered by the owner of the property. Upon petition, the court denied rehearing, but certified to this Court two questions of great public importance, each involving the existence of a duty to defend on the facts of the case. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer both questions in the negative and quash the Fourth District's holding below.
The facts of the case are as follows. In August, 1975, Le Chalet, Inc. (Le Chalet), as owner of certain realty, executed and delivered a construction loan mortgage to Virginia National Bank (VNB). Petitioner Pioneer National Title Insurance Company (Pioneer) insured the initial priority of that mortgage, and through twelve subsequent endorsements updated the policy to January, 1979. Thereafter, in February, 1979, Steckmar National Realty Corp. (Steckmar) entered into an agreement to purchase the aforementioned realty from Le Chalet, and this agreement was recorded in the public records of Palm Beach County. While this agreement was never performed by the parties, and ended in litigation which Steckmar lost, the agreement remained of record.
On April 1, 1980, VNB assigned the insured mortgage to its subsidiary, respondent Fourth Commerce. Because Le Chalet was in default on the mortgage and the note, Fourth Commerce initiated foreclosure proceedings against Le Chalet. Fourth Commerce included Steckmar in the foreclosure suit as a defendant because of the Le Chalet-Steckmar purchase and sale agreement which was of public record.
Steckmar responded to the foreclosure complaint by answer, affirmative defenses and counterclaims. Because the latter two were concededly not directed to the validity of the original mortgage or any defect or lien superior to it, the controversy in the trial court focused upon the answer as activating the duty to defend. In its answer to paragraph thirteen of the complaint, in which Fourth Commerce alleged that the fee simple owner had executed the mortgage, *1053 and that this mortgage had been recorded, Steckmar responded "Denied except as to the existence of public records." Counsel for Fourth Commerce informed Pioneer of the Steckmar answer and counterclaims, but did not demand that Pioneer enter the litigation. After Fourth Commerce successfully obtained a final judgment of foreclosure, Steckmar unsuccessfully appealed that judgment. Thereafter, Fourth Commerce notified Pioneer of its claim for costs and attorney's fees incurred in the foreclosure.
Fourth Commerce subsequently sued Pioneer, based on its refusal to undertake its "duty to defend" Fourth Commerce against Steckmar's answer, affirmative defenses and counterclaims in the foreclosure action. Both parties filed motions for summary judgment, and the trial court granted Pioneer's. It found no duty to defend for two reasons. First, because Steckmar had first contracted to purchase the property about one month after the final endorsement of the policy in January, 1979, the court reasoned that the case fell within the policy's exclusion of "adverse claims, or other matters ... attaching or created subsequent to the Effective Date of policy."
Second, it found that Steckmar's mere denial of paragraph thirteen, the execution and delivery of the mortgage by the fee simple owner, did not constitute a "defense." Therefore, the denial did not activate Pioneer's duty under the policy to "provide for a defense of an insured in all litigation consisting of ... defenses ... interposed against a foreclosure of the insured mortgage."
The Fourth District focused upon the latter issue in reversing and finding a duty to defend. In denying the execution of the mortgage by the owner, the court reasoned, Steckmar had attacked precisely that "validity or enforceability" insured by Pioneer. It was immaterial, therefore, whether the issue was raised by a general denial or an affirmative defense in the answer. Finding the policy's usage of the term "defense" ambiguous, the court construed the provision against Pioneer. Travelers Insurance Co. v. Bartoszewicz, 404 So.2d 1053 (Fla. 1981).
We quash the district court's opinion, as we agree with Pioneer that no duty to defend arose in the case because no defense was properly raised. While responding to the substance of the certified questions, we reject their form as reflecting the error in the district court's reasoning. The questions read as follows:
I
Is an insurer under a mortgagee insurance policy that insures against loss or damage sustained or incurred by the insured by reason of the invalidity or unenforceability of the lien of the insured mortgage upon the estate or interest involved obligated, in a foreclosure of said mortgage, to provide a defense to the insured against the claim of a defendant raised by general denial that the insured mortgage was executed by the fee simple owner of the mortgaged property?
Was the claim asserted in this case by way of a general denial that the insured mortgage was executed by the fee simple owner of the property subject to the insured mortgage litigation founded upon an alleged defect, lien, encumbrance, or other matter insured against by the policy in question obligating the insurer to provide a defense to the insured?
463 So.2d at 310. The court's error in both its reasoning and framing of the questions involved lay in its assumption that a "claim" has been raised in the case. The general denial below represented no such "claim."
Our decision of National Union Fire Insurance Co. v. Lenox Liquors, Inc., 358 So.2d 533 (Fla. 1977), explores an insurer's duty to defend and bears on the issue. In Lenox, we held that the allegations of the complaint govern any such duty. While admittedly the principle was there enunciated on the more typical facts involving an insurer's duty to defend a defendant in a suit, rather than the plaintiff in a foreclosure *1054 proceeding as we have here, we find the principle directly applicable.
As in Lenox, the party opposing the insured "did not allege facts which would bring the case within the coverage of the insurance policy," 358 So.2d at 536. In fact, here no allegations of any sort were made from which to even provide a basis for evaluating any duty to defend. The "defenses" contemplated by the policy conceivably involve affirmative defenses, counterclaims, or others, but not a simple denial. Florida's court have long followed the "general rule that a liability insurance carrier must defend its insured if the initial pleadings fairly bring the case within the scope of coverage." Accredited Bond Agencies, Inc. v. Gulf Insurance Co., 352 So.2d 1252, 1253 (Fla. 1st DCA 1977).
We find no such ambiguity in the term "defenses." The plain language of Florida Rule of Civil Procedure 1.110(c) requires a pleader to set forth in his answer "in short and plain terms his defenses," and does not contemplate such a complete lack of terms as that presented by Steckmar below. We note, too, that accepting Fourth Commerce's argument in this context would wreak special havoc in the title insurance context. The Fourth District found a duty to defend when Steckmar, at best a junior lienor and a stranger to the original mortgage transaction, merely denied the execution of the mortgage. Because most people in this position, if pleading accurately, would have to admit a lack of knowledge, and such a statement "shall operate as a denial," Florida Rule of Civil Procedure 1.110(c), to hold that a mere denial activates the duty to defend would indeed transform mortgagee title insurance into "prepaid mortgage foreclosure costs" insurance. Thus would insurers be forced to underwrite risks not bargained for by either party.
We therefore answer both questions in the negative. The decision of the district court of appeals is quashed and the cause is remanded with instructions to affirm the judgment of the trial court.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH, SHAW and BARKETT, JJ., concur.