**LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, Plaintiff,**

v.

**JDC (AMERICA) CORPORATION, a Florida corporation, Defendant.**

No. 89–1081–CIV–DAVIS.

United States District Court, S.D. Florida.

March 18, 1993.

Ana T. Barnett, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, FL, John E. McDonald, Jr., Special Claims Counsel, Lawyers Title Ins. Corp., Richmond, VA, D. Daniel Barr, Bell, Boyd & Lloyd, Chicago, IL, for Lawyers Title.

Hugo L. Black, Kelley Black Black Byrne & Beasley, P.A., Miami, FL, for JDC (America).

## MEMORANDUM OPINION AND ORDER

EDWARD B. DAVIS, District Judge.

Before the Court are a Motion for Summary Judgment brought by the Plaintiff, Lawyers Title Insurance Corporation ("Lawyers Title"), (D.E. 51), and a Motion for Partial Summary Judgment brought by the Defendant JDC (America) Corporation ("JDC"), (D.E. 71). Lawyers Title, a title insurance company, has brought this action for declaratory judgment against the insured, JDC. At issue is whether Lawyers Title's insurance policy created a "duty to defend" in JDC's foreclosure action against its former partner. Because this litigation is not covered by the policy, the Court will grant Lawyers Title's Motion.

## I. Background

The parties' contract of insurance resulted from a land transaction that occurred in the mid–1980s. Pursuant to a "Warranty Deed to Trustee Under Land Trust Agreement," AmeriFirst Florida Trust Company ("AmeriFirst") held fee simple title to a parcel of real estate near downtown Miami. By a "Land Trust Agreement," AmeriFirst held title to the property as trustee for Brickell Stations Towers Inc. ("BST"), the sole beneficiary. The Land Trust Agreement states that BST's interests are personal property. (Pl.'s Statement of Undisputed Facts Ex. A at ¶ 2.)

On November 20, 1984, BST and the Defendant, JDC, entered into an agreement for development of the Miami property. Under this agreement, JDC would arrange a loan to construct a building on the property, and BST would assign its beneficial interest in the land trust to a joint venture between BST and JDC. On January 17, 1985, the day before the loan closed, BST and JDC created a partnership called Brickell Station Towers Joint Venture ("the Partnership"). The loan closed, and as part of the transaction, two mortgage and security agreements encumbering the Miami property were given to JDC to secure the loan. Thus, due to the form of the parties' transaction, JDC held two seemingly contradictory legal roles: mortgagee and, as partner with BST, beneficiary to the trust that held the security of its mortgage.

Prior to the closing, the Plaintiff, Lawyers Title, issued commitments to insure the validity and enforceability of the two mortgage liens. After the closing, the mortgages were duly recorded, and on January 24, 1985, Lawyers Title issued policies of insurance to JDC.

AmeriFirst and the Partnership defaulted on the mortgages. JDC subsequently filed an action in state court seeking foreclosure. JDC's Amended Complaint, which named both AmeriFirst and BST as defendants, also sought damages for breach of contract and breach of promissory note, as well as equita-

ble claims for an accounting, quantum meruit, and a declaratory judgment.

AmeriFirst did not assert any affirmative defenses or counterclaims. BST did, however. Because certain of BST's defenses challenged the enforceability of the mortgages, JDC notified Lawyers Title of a claim under the policies. While reserving its rights under the policies, Lawyers Title offered to retain counsel to represent JDC in the state court proceedings. JDC refused the offer, but later renewed its claim.

JDC contended that it was entitled to a complete defense of all claims in the state court proceeding, regardless of whether the claims were directly related to the validity of the mortgages. Lawyers Title took the position that it only had to defend claims specifically related to the covered mortgages, and it brought this declaratory action to resolve the parties' impasse. JDC filed related counterclaims for breach of contract. Although JDC and BST ultimately settled the state court litigation, JDC's claim for the costs of its defense remains at issue.

## II.  Discussion

■ Each of the parties has moved for summary judgment on the issue of Lawyers Title's liability for JDC's foreclosure litigation. The Court will not grant summary judgment unless the movant demonstrates no genuine dispute exists as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Similarly, the movant may show an absence of evidence in a material issue where its opponent bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). All reasonable doubts as to the facts are to be resolved in favor of the party opposing summary judgment. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985).

■ In the present cross motions, JDC claims that, as a matter of law, Lawyers Title had a duty to defend all matters in the foreclosure action. Lawyers Title contends that it need only defend covered claims. An insurer has a duty to defend only if the pleadings fairly allege facts that are covered

by the policy. *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533, 535 (Fla.1977). The duty to defend arises where the pleadings allege facts which "fairly bring the case within the scope of coverage." *Accredited Bond Agencies, Inc. v. Gulf Ins. Co.*, 352 So.2d 1252, 1253 (Fla.Dist.Ct.App.1977), *quoted in Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Properties Corp.*, 487 So.2d 1051, 1054 (Fla.1986). Thus, the issues on this case center around the interpretation of the Lawyers Title insurance policies, a particularly appropriate matter for summary judgment. *Johnson v. American Family Life Assurance Co.*, 583 F.Supp. 1450, 1452 (D.Colo.1984).

In describing the duty to defend, the policies [1] state:

> The Company [Lawyers Title], at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or defenses, restraining orders or injunctions interposed against a foreclosure of the insured mortgage ... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

(Am.Compl.Ex. A ¶ 3(a).) Because Lawyers Title need only provide a defense "to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy," the issue, quite simply, is whether JDC's litigation with BST involved an insured interest. The policies describe the insured interest as follows:

> The estate or interest in the land described in [the policy] and which is encumbered by the insured mortgage is:
>
> Fee Simple
>
> The estate or interest referred to herein is at Date of Policy vested in:
>
> > AMERIFIRST FLORIDA TRUST COMPANY, as Trustee, under unrecorded Trust Agreement dated February 29, 1984

(Am.Compl.Ex. A.) Significantly, the policies also expressly exclude from coverage

---

1.  The operative language of the policies is identi-cal in every material respect.

**1546**

"[d]efects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant...." (*Id.*)

In light of this language, Lawyers Title contends that the policy did not insure against JDC's litigation with BST. The Court agrees, for two reasons. First, any "defects, liens, encumbrances, adverse claims, or other matters" asserted by BST resulted ·from its agreements with JDC, and therefore were expressly excluded from the policy. Under the language of the exclusion, adverse claims are "created, suffered, assumed or agreed to" by the insured where they arise from the insured's deliberate act or omission. *See First American Title Ins. Co. v. Kessler*, 452 So.2d 35, 39 & nn. 5–7 (Fla.Dist.Ct.App.1984) (detailing the meaning of the terms "created," "suffered," "assumed," and "agreed to").

BST's claims against JDC's foreclosure arose from JDC's own agreements with BST. JDC maintains that BST's "Motion to Quash Mortgage" and first, second, third, fourth, fifth, and seventeenth affirmative defenses were covered under the policy. Each of these base their legal arguments on JDC's partnership with BST.[2] In essence, these claims challenged whether JDC, BST's partner in the joint venture, could enforce mortgages against the interests of the venture itself. Because JDC "created" the partnership, or at the very least "agreed to" it, and BST's claims arise from the partnership, these claims are excluded from the policy's coverage.

In addition, the language of the insurance policy indicates that Lawyers Title only guaranteed the validity of AmeriFirst's title to the property. Nothing in the language of the policy discusses the trust beneficiary's interests. Essentially, the title insurance policy addressed JDC's risk that Ameri-First's title to the property might be defective. If it were, the Partnership's interests, which derived from AmeriFirst's title, would also be defective. But the state court litigation stemmed not from any defect in Ameri-First's title, but from a dispute between the partners themselves. Thus, the harm to JDC is not defective title, but the difficulty in collecting the partnership's indebtedness.

Lawyers Title did not have a duty to protect JDC from such a risk. A title insurance policy does not guarantee that the insured will be able to collect its debts. A mortgage lien and its underlying debt, manifested by the note, "are two entirely different legal concepts or 'species.'" *Bank of Miami Beach v. Fidelity & Casualty Co.*, 239 So.2d 97, 99 (Fla.1970). In light of this distinction, the Florida Supreme Court has noted that "a guaranty of the validity of the mortgage *lien* cannot and should not be construed as guaranteeing that the insurer has made a careful investigation of the origin of the mortgage *debt* and guarantees its payment or validity." *Id.*

■ The nature of the trust agreement between AmeriFirst, JDC, and BST buttresses the conclusion that the title insurance policy did not apply to the state court litigation. Without dispute, the trust was an "Illinois land trust." In such an arrangement "the trustee is vested with full legal and equitable title subject to certain specified rights of the beneficiaries which are declared to be the personal property of the beneficiaries." *Taylor v. Richmond's New Approach Ass'n, Inc.*, 351 So.2d 1094, 1095 (Dist.Ct. App.1977), *cert. denied,* 366 So.2d 885 (Fla. 1978). Here, the beneficial interests of the

---

**2.** Excerpts from the Defenses clearly reveal this basis:

"JDC is jointly liable on the mortgage as a joint venture partner and as such cannot foreclose a mortgage against the partnership." (1st Aff.Defense.) "[A] general partner cannot sue a joint venture on a debt absent a prior accounting and settlement." (2d Aff.Defense.) "JDC failed to name each partner of the Joint Venture...." (3d Aff.Defense.) "JDC as both plaintiff and as a general partner of the Joint Venture is both plaintiff and defendant in this action." (4th Aff.Defense.) "JDC as a general partner is joint- ly liable on all partnership debts to creditors." (5th Aff.Defense.) "[A] joint venture partner may not, consistent with its fiduciary duties to its partner, acquire a lien against the joint venture and then attempt to foreclose the lien against the joint venture." (17th Aff.Defense.) (*See* Am. Compl.Ex. 2.)

The "Motion to Quash Assignment of Mortgage" is similarly grounded. "JDC, a joint venture general partner is attempting to enforce a mortgage and notes against the partnership and its general partner." (Am.Compl.Ex. 3 at 1.)

partners are a form not of real property, but of personal property. Because the title insurance policy protects AmeriFirst's fee simple estate in real property, the partners' interests do not fall within the policy's literal confines.

Furthermore, because an Illinois land trust governed the partners' interests, Lawyers Title need not have extended coverage to the trust beneficiaries to protect the title beneath the mortgage. Applicable Florida legislation dictates that under such a trust, a mortgagee may deal exclusively with the trustee and need not investigate the interests of beneficiaries. *See* Fla.Stat.Ann. § 689.-071(2, 3) (1969); *Taylor*, 351 So.2d at 1095; *First Fed. Sav. Bank v. Drovers Nat'l Bank*, 237 Ill.App.3d 340, 180 Ill.Dec. 176, 606 N.E.2d 1253 (1992).

In *First Federal Savings Bank*, beneficiaries to an Illinois land trust sought to prevent foreclosure following the trustees' default. The trial court granted foreclosure in summary judgment; the Appellate Court of Illinois not only affirmed the ruling, it awarded sanctions for the frivolity of the beneficiaries' appeal. The court held that the trustee had the right to mortgage the property, even if the mortgage could defeat the beneficiaries' interests.

Like the beneficiaries in *First Federal Savings Bank*, BST filed frivolous claims due to its misconception of the trust agreement. In its affirmative defenses in state court, BST contended, for example, that "JDC is jointly liable on the mortgage as a joint venture partner and as such cannot foreclose a mortgage against the partnership." (Pl.'s Statement of Undisputed Facts Ex. A (Answer & Affirmative Defenses) at ¶ 49.) However, the trustee, AmeriFirst, was the title holder and mortgagor. As mere beneficiaries, BST and JDC could do nothing to prevent foreclosure.

■ JDC maintains that if any party challenges the validity of the mortgage, the mortgage is at risk until the defenses have been defeated. It is true that the insurer must defend the insured even if the claims are ultimately proven factually incorrect or legally unsound. *Logozzo v. Kent Ins. Co.*, 464 So.2d 605, 607 (Fla.Dist.Ct.App.1985). If, however, the pleadings raise facts that are plainly immaterial to the insured interest, the duty to defend does not arise. *Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Properties Corp.*, 487 So.2d 1051 (Fla.1986). In *Pioneer National*, a junior lienor denied the execution of the superior mortgage. The Florida Supreme Court held that such a denial would not implicate the title insurer's duty to defend: "[T]o hold that a mere denial activates the duty to defend would indeed transform mortgage title insurance into "prepaid mortgage foreclosure costs" insurance. Thus insurers would be forced to underwrite risks not bargained for by either party." *Id.* at 1054.

These principles resound in the case at bar. To be sure, BST offered more than a general denial. However, its claims exclusively concerned the partners' beneficial interests, which fall within the policy's exclusions, and JDC's ability to collect. The claims do not concern the validity of AmeriFirst's title. In light of the law governing Illinois land trusts, these contentions were immaterial to the enforceability of the mortgage lien covered by Lawyers Title's policy. In essence, requiring Lawyers Title to litigate these matters would force it to underwrite the risk that the partnership between JDC and BST could disintegrate. Surely the parties did not bargain for such a policy.

JDC also contends that triable issues exist concerning whether Lawyers Title should be estopped from denying that its policy extended to the state court litigation. This misstates Florida law. "The general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is *not* applicable to matters of *coverage* as distinguished from grounds for *forfeiture*." *Six L's Packing Co. v. Florida Farm Bureau Mut. Ins. Co.*, 268 So.2d 560, 563 (Dist.Ct.App.1972), *approved and adopted*, 276 So.2d 37 (Fla.1973). Thus, estoppel will not enhance JDC's title insurance coverage.

In sum, the title insurance policy at issue did not cover BST's claims. First, by its partnership with BST, JDC itself created BST's adverse claims, and therefore the policy expressly excluded them. Second, the policy insured only that AmeriFirst held val-

id, unencumbered title to the mortgaged property. The policy did not cover the beneficial interests under the Illinois land trust which established the Partnership's rights to the property. BST's claims alleged facts affecting the beneficial interests only. Thus, BST did not allege facts that fell within the coverage of the policy, which is required to precipitate the insurer's legal action. Consequently, it is hereby

ORDERED AND ADJUDGED that the Motion for Summary Judgment brought by the Plaintiff, Lawyers Title Insurance Corporation, is GRANTED, and that the Motion for Partial Summary Judgment brought by the Defendant, JDC (America) Corporation, is DENIED.

DONE AND ORDERED.