IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

SOUTHERN OWNERS INSURANCE
COMPANY,

      Appellant,

v.

COOPERATIVA DE SEGUROS MULTIPLES,
ETC., ET AL.,

      Appellees.

_____/

Case No. 5D12-3048

Opinion filed July 18, 2014

Appeal from the Circuit Court
for Orange County,
John Marshall Kest, Judge.

Manuel J. Alvarez, Kerry C. McGuinn, Jr.,
and Carla M. Sabbagh, of Rywant,
Alvarez, Jones, Russo & Guyton, P.A.,
Tampa, for Appellant.

Daniel P. Mitchell and Debra M. Metzler, of
Barr, Murman & Tonelli, P.A., Tampa, for
Appellees Cooperativa De Seguros
Multiples de Puerto Rico and Daisy
Eastwood.

Peter G. Walsh, of David W. Singer &
Associates, PA, Hollywood, for Appellee
Margarita Fiallo.


EVANDER, J.

      Southern Owners Insurance Company ("Southern Owners") appeals an

amended summary final judgment declaring that certain policies of insurance issued by

Southern Owners provided coverage to Daisy Eastwood for the claims brought against her by Margarita Fiallo, as personal representative of the Estate of Damian Fiallo. Because the undisputed material facts of record do not support the trial court's determination of coverage, we reverse.

Ms. Fiallo brought a wrongful death action against Daisy[1] and Eastwood Community Association, Inc. after seven-year-old Damian drowned in the Eastwood Community swimming pool while in Daisy's care. Daisy owned a home in the Eastwood residential community and, thereby, was a member of the Eastwood Community Association. As a member of the Association, Daisy had a right to use the community swimming pool. The lawsuit filed by Ms. Fiallo alleged that Daisy negligently supervised Damian and, as a result, Damian drowned.

The complaint filed by Ms. Fiallo further alleged Eastwood Community Association was a homeowners' association that owned or operated the swimming pool and, as such, had a duty to operate the pool in a reasonably safe manner. Eastwood Community Association was alleged to have breached that duty in numerous ways, thereby causing Damian's death.

At the time of the loss, Daisy was insured under a homeowner's insurance policy issued by Appellee, Cooperativa de Seguros Multiples de Puerto Rico ("Cooperativa"). After Ms. Fiallo filed her wrongful death action in the underlying case, Cooperativa retained counsel to defend Daisy. At the time of the loss, Eastwood Community Association was insured under two policies issued by Southern Owners; a comprehensive general liability policy and an umbrella policy. The policies included an

---

[1] To avoid confusion, Daisy Eastwood will be referred to as "Daisy." It is pure coincidence that Daisy and the Association share the same name.

endorsement that extended coverage to each individual member of the Association, "**but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that member's exclusive use or occupancy.**"  (Emphasis added).

After the commencement of the underlying action, Cooperativa and Daisy instituted a declaratory judgment action against Southern Owners seeking a determination that Southern Owners was required to defend and indemnify Daisy for the claim brought against her by Ms. Fiallo.  Subsequently, Ms. Fiallo moved to intervene in the declaratory judgment action.  When the motion to intervene was granted, Ms. Faillo filed her own declaratory judgment complaint against Southern Owners.  Ultimately, the trial court entered summary judgment in favor of Cooperativa, Daisy, and Ms. Fiallo, finding that Daisy was entitled to a defense and to indemnity under both of the Southern Owners' insurance policies.  This appeal followed.

The parties agree that any potential liability Daisy may have in the underlying wrongful death action would not arise from the "maintenance" or "repair" of the swimming pool.  Thus, the only issue is whether Daisy has potential liability arising from the "ownership" of the pool.

In its detailed order, the trial court correctly concluded that the phrase "arising out of" is broader in meaning than the term "caused by" and means "originating from, having its origin in, growing out of, flowing from, incident to, or having a connection with." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532-33 (Fla. 2005).

The trial court continued its analysis as follows:

> DAISY was entitled to make use of the pool solely because of her membership in EASTWOOD which arose solely from her ownership of her unit.  In other words, her right to use

3

the pool, to invite the decedent to use the pool or to even enter the pool area was an incident of her ownership interest in the EASTWOOD common elements, including the pool. More simply stated, but for her ownership, neither DAISY nor Damian Fiallo, would have been in the pool area, in the pool itself or even subject to the provisions that guests must be supervised while at the pool.

If Daisy did, in fact, have an ownership interest in the Eastwood common areas, Appellees' argument would be stronger.  However, as all parties acknowledged in their supplemental briefs, the record is extremely sparse on the issue of whether individual members of the Eastwood Community Association have any ownership interest in the community swimming pool.[2]  Section 720.301(2), Florida Statutes (2009), suggests that Daisy may not have an ownership interest in the community pool:

> "Common area" means all real property within a community which is owned or leased by an association or dedicated for use or maintenance by the association or its members, including, regardless of whether title has been conveyed to the association:
>
> (a)  Real property the use of which is dedicated to the association or its members by a recorded plat; or

_____

[2] Throughout the proceedings, Southern Owners has maintained that because the underlying complaint alleged that Daisy was negligent in supervising Damian, any liability on the part of Daisy did not arise out of her "ownership" interest in the parcel on which the community pool was situated.  Although Southern Owners denied that Daisy had an ownership interest in the community pool in its pleadings, at times it appeared to accept opposing counsels' assertion that Daisy, as a member of the Homeowner's Association, had an ownership interest in the common areas.  Appellees' contention that Daisy had an ownership interest in the common areas appears to have been based on caselaw involving condominiums.  However, the Florida statutory scheme regarding ownership of common elements in a condominium is significantly different from the statutory scheme regulating the ownership of common areas in a homeowners' association.  Section 718.103(11), Florida Statutes (2009), expressly defines "condominium" to mean "that form of ownership of real property created pursuant to this chapter, which is comprised entirely of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, an undivided share in common elements."  By contrast, as referenced above, the statute regulating homeowners' associations suggests that title to the common areas is often held by the association.

> (b) Real property committed by a declaration of covenants to be leased or conveyed to the association.

In the instant case, the record is devoid of deeds, association articles of incorporation and/or bylaws, plats, declarations of covenants, or any other documents or evidence[3] that would tend to reflect Daisy's specific ownership interest, if any, in Eastwood Community Association's common areas.

Absent an ownership interest in the pool, Daisy would not be entitled to coverage under Southern Owners' policies because her potential liability would arise, at most, out of her "use" of the pool. Although the right to use property is an indicia of ownership, it does not equate to ownership. The primary elements of ownership are the rights of possession, use and enjoyment, the right to change or improve the property, and the right to alienate the property. *Ill. Dep't of Transp. v. Anderson*, 892 N.E.2d 116, 120 (Ill. App. Ct. 2008). Because it is unclear from the record whether Daisy had an ownership interest in the community pool, we conclude that it was error to enter summary judgment in favor of Appellees.

REVERSED and REMANDED.

ORFINGER, J., concurs.
SAWAYA, J., concurs in part, dissents in part, with opinion.

---

[3] Appellees cite to the deposition testimony of Cheryl Simmons, Eastwood Community Association's manager, for support of its contention that Daisy had an ownership interest in the community pool. However, a close review of Ms. Simmons' testimony reflects that she gave conflicting testimony on this issue. She testified at one point that the common areas were owned by the Association and at another point that they were owned by the members of the Association. Furthermore, it is unclear from her deposition whether Ms. Simmons had the knowledge necessary to be able to render an opinion on this issue.

5

SAWAYA, J., concurring in part; dissenting in part.

I agree with the majority that the summary judgment rendered in favor of the Appellees in the declaratory judgment action should be reversed. But the majority remands the case to the trial court, apparently for the purpose of allowing the parties to establish whether Daisy Eastwood (the alleged tortfeasor and additional individual insured under the policy endorsement) has an ownership interest in the property. I do not believe that is the controlling issue in this case and, therefore, I respectfully dissent from that part of the opinion. I believe that the issue in this appeal is whether the personal act of Eastwood's alleged negligent supervision of the child who drowned in the pool is covered under the provisions of the policy endorsement, which will be discussed shortly. It clearly is not, and a remand to the trial court should only be for the purpose of entering summary judgment in favor of the Appellant.

Coverage does not exist under the policy endorsement because it only provides coverage for the individual members of the association, like Eastwood, for "liability arising out of the ownership, maintenance or repair" of the premises. This coverage is for premises liability, which insures against damage or injury arising out of a dangerous condition on the premises. Eastwood is accused of an act of personal negligence in failing to properly supervise the child who drowned, which has nothing to do with a dangerous condition on the premises, and the parties do not contend otherwise.

The endorsement was issued as a part of a Commercial General Liability (CGL) insurance policy that, like the typical commercial lines policy, insures against loss caused by business operations conducted on the premises. Eastwood was not conducting any business activity on the premises at the time the child drowned, and

6

again, the parties do not contend otherwise.[4]  But the issue in the declaratory judgment action is whether coverage is provided under the specific provisions of the endorsement, so I will confine the remainder of my argument to that issue.

[4] I do not believe that coverage exists under the other provisions of the CGL.  In order to properly determine coverage, it is necessary to consider the type of policy involved.  See U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871 (Fla. 2007); Union Am. Ins. Co. v. Haitian Refugee Ctr./Sant Refijie Ayisyin, Inc., 858 So. 2d 1076, 1078 (Fla. 3d DCA 2003).  "Commercial General Liability policies are designed to protect an insured against certain losses arising out of business operations."  J.S.U.B., Inc., 979 So. 2d at 877 (citation omitted).  CGL policies are distinguished from personal liability policies, and the importance of the distinction between the two lies in what is and what is not covered under each.  "Whereas personal liability insurance policies are intended to protect the insured against the risks which are associated with the 'personal' aspects of the insured's life, commercial general liability policies are designed to protect the insured from losses arising out of business operations."  9A Steven Plitt et al., Couch on Insurance § 129:1 (3d ed. 2013) (footnote omitted).  The Florida courts have adopted this principle.  J.S.U.B., Inc.; Union Am..  Therefore, unless the loss arises out of the insured's business operations, it is not covered.

These principles extend beyond the confines of Florida jurisprudence, as the authors in Couch on Insurance explain:

> Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business.  Consequently, a loss must arise out of the insured's business operations in order to be covered under the policy issued to the insured.

9A Steven Plitt et al., Couch on Insurance § 129:2 (3d ed. 2013) (footnote omitted).  In Stempel on Insurance Contracts, the author similarly explains:

> Appreciating the nature and organizational structure of the CGL is of value in gauging coverage controversies.  The CGL, like most insurance policies, has a relatively targeted objective for insuring risks.  It is designed to protect commercial operators from litigation and liability arising out of their business operations.

2 Jeffrey W. Stempel, Stempel on Insurance Contracts § 14.01[B] at 14-17 (3d ed. Supp. 2010); see also Kennedy v. Lumbermans Mut. Cas. Co., 577 N.Y.S.2d 353, 354 (N.Y. Sup. Ct. 1991) ("Looking at the overall scheme of the policy and the exclusion in particular, the policy is a homeowner's policy and intends to cover only the home and domestic related activities.  This is not a 'business' policy, and the carrier wishes to

This declaratory judgment action was filed against the issuer of the CGL and the endorsement, Southern Owners Insurance Company (Southern), and was considered in conjunction with a wrongful death action initiated by the personal representative of the deceased child (the Estate). The wrongful death action was filed against Eastwood, the individual insured, the Eastwood Community Association (the Association), which is also an insured under the policy (it is a mere coincidence that both defendants share the name Eastwood), and House of Management Enterprises for Community Associations, Inc. (House of Management). Eastwood owns a home in a residential community, and the Association owns and operates the common areas of the residential community, which include the pool and adjoining amenities. House of Management was hired by the Association to manage and operate the common areas, including the pool. Eastwood, as a member of the Association, is entitled to use the common areas, including the pool. Eastwood has a homeowner's policy issued by Cooperativa De Seguros Multiples de Puerto Rico (Cooperativa).

The deceased child is Damian. Eastwood invited him to the pool to play with her son. Tragically, Damian drowned. The sole allegation against Eastwood in the

make sure that it is not forced to cover business activities. The policy holder has, of course, not paid for business coverage."), affirmed as modified on other grounds, 593 N.Y.S.2d 659 (N.Y. App. Div. 1993).

Considering the policy as a whole, it is clear that it provides coverage that is limited to business conducted on the premises. The definition of "insureds" in Section II of the policy specifically provides that if you are designated as an individual insured, "you and your spouse are insureds, **but only with respect to the conduct of a business of which you are the sole owner**." (Emphasis added). The definition of insureds goes on to discuss partnerships or joint ventures, but only "with respect to the conduct of your business." Therefore, the CGL policy does not provide coverage for personal acts of negligence, such as the negligent supervision of a child, committed by an individual Association member who uses the pool for personal and social reasons, as Eastwood did.

8

underlying wrongful death action is that she negligently supervised Damian. There is absolutely nothing in the record to suggest that the drowning was caused by a dangerous condition on the premises.

After the wrongful death action was filed, Eastwood and Cooperativa filed the declaratory judgment action seeking to declare that the CGL policy endorsement issued by Southern to the Association provides coverage to Eastwood individually and personally for the alleged wrongful death of the child. At the time, Cooperativa was providing the defense for Eastwood pursuant to the homeowners policy it had issued to her. The Estate intervened in the action, also seeking to have Southern placed on the hook for coverage and indemnity in the wrongful death action filed against Eastwood. Motions for summary judgment were filed by the parties on each side. The trial court granted the motion filed by Eastwood and Cooperativa and denied the motion filed by Southern. Southern appeals, arguing that the summary judgment should be reversed and this case remanded for entry of summary judgment in its favor.

The basis of the declaratory judgment action is an endorsement issued by Southern that includes the members of the Association as additional insureds under limited circumstances. That endorsement provides:

**ADDITIONAL INSURED**

**HOMEOWNERS ASSOCIATION MEMBERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured each individual member of the insured Homeowners Association, but only with respect to liability arising out of the ownership, maintenance or repair

9

of that portion <u>of the premises</u> which is not reserved for that member's exclusive use or occupancy.

(Emphasis added). The provisions of the endorsement that are pertinent to the issue in this case are underscored.

The issue in this case is whether there is coverage under this endorsement for Eastwood's personal act of negligent supervision, and "coverage under an insurance contract is defined by the language and terms of the policy." <u>Swire Pac. Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So. 2d 161, 169 (Fla. 2003) (citing <u>Siegle v. Progressive Consumers Ins. Co.</u>, 788 So. 2d 355, 359 (Fla. 4th DCA 2001)). "In interpreting an insurance contract, we are bound by the plain meaning of the contract's text." <u>State Farm Mut. Auto. Ins. Co. v. Menendez</u>, 70 So. 3d 566, 569 (Fla. 2011); <u>see also</u> <u>Travelers Indem. Co. v. PCR Inc.</u>, 889 So. 2d 779, 785 (Fla. 2004) ("If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written."). "In construing words in insurance policies, it is appropriate for courts to turn to legal and non-legal dictionaries for common meanings." <u>Siegle</u>, 788 So. 2d at 360.

The endorsement specifically provides coverage for "liability arising out of ownership, maintenance, or repair . . . of the premises." The plain meaning of this provision clearly reveals that the endorsement provides premises liability coverage only for loss that results from a dangerous condition on the premises. The majority correctly states that "ownership" means the right to possess the property, to change or improve it, and to alienate it. Indeed, the courts have repeatedly held that ownership requires the owner to comply with the duty to properly maintain and repair the premises and warn

10

invitees of known dangerous conditions on the premises. Friedrich v. Fetterman & Assocs., P.A., 137 So. 3d 362 (Fla. 2013); Dampier v. Morgan Tire & Auto, LLC, 82 So. 3d 204 (Fla. 5th DCA 2012); Aaron v. Palatka Mall, L.L.C., 908 So. 2d 574 (Fla. 5th DCA 2005). The term "maintenance" means "the work of keeping something in suitable condition." Webster's II New Riverside University Dictionary 717 (1984 ed.). The term "repair" means "to restore to sound condition after damage or injury." Webster's II New Riverside University Dictionary 996 (1984 ed.); see also Siegel, 788 So. 2d at 360 (stating that "repair" means "restore to a good condition" (quoting The Merriam Webster Dictionary 410 (1994 ed.))). I believe that the plain meaning of the terms and provisions of the endorsement is that it provides premises liability coverage for the owner regarding dangerous conditions on the premises that cause injury. See Union Am. Ins. Co. v. Haitian Refugee Ctr./Sant Refijie Ayisyin, Inc., 858 So. 2d 1076, 1078 (Fla. 3d DCA 2003); Hilton Hotels Corp. v. Emp'rs Ins. of Wausau, 629 So. 2d 1064, 1065 (Fla. 3d DCA 1994) (holding that one of the reasons a policy providing coverage for liability arising out of the ownership, maintenance, or repair of the premises did not provide coverage for the alleged loss is because "[t]he accident was not a result of any physical condition which emanated from the premises . . ."); Parliament Ins. Co. v. Bryant, 380 So. 2d 1088, 1089-90 (Fla. 3d DCA 1980) (analyzing a policy that provided coverage for injuries "'arising out of the ownership, maintenance, or use of the insured premises,'" and stating that "it is evident that that the policy we are examining is a premises liability policy, not a general liability policy . . ."). Therefore, it does not provide coverage for Eastwood's personal act of negligent supervision of the child.

In Union American, the court was confronted with a CGL policy that provided coverage for "'bodily injury . . . arising out of [t]he ownership, maintenance or use of the

11

premises shown in the [s]chedule and operations necessary or incidental to those premises.'" Union Am. Ins. Co., 858 So. 2d at 1077. That policy differs from the endorsement in the instant case because it provided coverage for injury arising from the "use of the premises" and to "operations necessary or incidental to those premises," which are not included in the endorsement in the instant case. But both policies do provide for coverage for loss arising out of the ownership of the premises. The court in Union American held that the policy provision essentially made the policy a "designated premises policy," which meant that the injury must have occurred on the premises and resulted from a dangerous condition on the premises as opposed to the active negligence of the tortfeasor. Id. at 1078. The court explained:

> As was said in 11 Couch on Insurance 2d section 44:379 at 551-52 (1982):
>
>> A very common form of liability insurance is the one which insures the owner, occupier, or operator of real property against liability incident to his ownership or use of the premises. Such insurance, the purpose of which is simply to protect against liability arising from the condition or use of the building as a building must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted therein. More simply stated, a building liability policy does not cover a liability arising from the insured's activity in the building.

Id.

Rather than consider all of the pertinent provisions of the endorsement, the trial court and the analysis in the majority opinion erroneously focus solely on the term

12

"ownership" in isolation.[5] It is improper to consider chosen phraseology of a policy in isolation to the rest of the provisions. § 627.419(1), Fla. Stat. (2013) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto."); U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007) ("'[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'" (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000))); Swire Pac. Holdings, Inc., 845 So. 2d at 166 (same); Cont'l Ins. Co. v. Collinsworth, 898 So. 2d 1085, 1087 (Fla. 5th DCA 2005). Specifically, "'when construing an insurance policy to determine coverage the pertinent provisions should be read in pari materia.'" J.S.U.B., Inc., 979 So. 2d at 877 (quoting State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1074-75 (Fla. 1998)). Proper application of these rules requires that "[a]n insurance policy . . . receive a reasonable, practical and sensible interpretation."

---

[5] Eastwood and Cooperativa argue that a duty to defend is established by the allegations in the underlying complaint that Eastwood's membership in the Association, which allows her the right to use the swimming pool owned by the Association, bestows upon Eastwood ownership of the pool and creates coverage and a duty to defend. I agree with the majority that a duty to defend cannot be based on such allegations. This is no more than clever and fanciful pleading designed to create coverage that does not exist. As the court explained in Pioneer National Title Insurance Co. v. Fourth Commerce Properties Corp., 487 So. 2d 1051 (Fla. 1986), to allow a party to improperly plead his way into coverage by asserting allegations that do not fairly bring the cause of action within the scope of coverage would force insurance companies "to underwrite risks not bargained for by either party." Id. at 1054; see also Great Am. Bank of Fla. Keys v. Aetna Cas. & Sur. Co., 662 F. Supp. 363, 365 (S.D. Fla. 1986) ("In Pioneer, the court reasoned that to hold an insurer liable for an action not covered under the policy would force insurers 'to underwrite risks not bargained for by either party.'" (quoting Pioneer, 487 So. 2d at 1054)). The complaint in the instant case does nothing more than attempt to create an inference of ownership, and no fair reading of it can lead to the conclusion that Eastwood was an owner of the premises.

Denman Rubber Mfg. Co. v. World Tire Corp., 396 So. 2d 728, 729 (Fla. 5th DCA 1981) (citations omitted).

When proper consideration is given to all of the pertinent provisions, it becomes clear that the endorsement does not provide coverage in this case. The complaint against Eastwood does not allege that the child was injured as a result of a dangerous condition on the premises. When deciding whether an insurer has a duty to defend, the allegations of the underlying complaint determine whether that duty exists. Essex Ins. Co. v. Big Top of Tampa, Inc., 53 So. 3d 1220, 1223 (Fla. 2d DCA 2011). A liability insurer has no duty to defend a suit where the complaint on its face alleges facts that fail to bring the case within the coverage of the policy. Id. If there is no duty to defend, there is no duty to indemnify. Id. at 1224. Because this endorsement and the coverage it provides do not apply to the alleged act of personal negligence in this case, there is no corresponding duty to defend or indemnify on the part of Southern. I would reverse the judgment under review and remand this case to the trial court to enter a summary judgment declaring that Southern has no duty to defend or indemnify for Eastwood's alleged act of negligence.