RAWLS, Judge.
The defendant, Auto-Owners Insurance Company, has appealed from a jury verdict awarding the insured, Green, $3,500.00 plus costs and interest for damages to his automobile due to theft and collision.
The question on appeal is whether the insured is entitled to recover more than the estimate of repair.
On June 5, 1966, Green parked his six-months-old 1966 Lincoln Continental (cost price $7,200.00) in front of his business. An hour later he learned it had been stolen and driven into a telephone pole which broke and fell across the top of the car. It was insured by Appellant Insurance Company whose adjuster, Evans, had the damage appraised by Piersol Auto Appraisal. The appraisal indicated that the car could be repaired for $2,353.11 which included, among other things, straightening the frame, but it left as an open item any damage done to the front end suspension and the transmission, the extent of which damage could not he determined until the car was put in driving condition. The policy provided:
“The Company shall not be liable beyond the actual cash value of the property insured at the time any loss or damage occurs, and such loss or damage shall be ascertained accordingly with proper deduction or depreciation however caused * * * and shall in no event exceed what it would then cost to repair or replace the property, or such parts thereof as may be damaged with other of like kind and quality. * * *
“The Company may at its option, either repair or replace any part or all of the property upon which loss is claimed or pay to the assured in money the full amount of such loss as determined in accordance with the provisions of this policy, subject however, to such deduction, if any, as may be applicable thereto. ‡ * * »
The Company elected to repair the car and secured an agreement from North Florida Motors (from whom the car was purchased originally) to repair same for the amount of the appraisal. The insured was agreeable to this provided North Florida Motors guaranteed that the car would be in the same condition and have the *31 same value as before the accident. However, North Florida Motors refused to make this guarantee, and the insured refused to have the car repaired.
The insured informed the adjuster that he was to leave ten days after the accident on a thirteen-week trip in the west. He was carrying a TV film to promote St. Augustine and his own businesses and had appointments with various TV stations. This trip could not be postponed. ■ As a result, his negotiations with the insurance adjuster covered only a short period of time — seven or eight days. The adjuster finally offered Green $2,353.11 and requested that he sign a release. Green refused. The value of the car at the time of the accident was $6,000.00, and the highest bid Green had received for the salvage was $1,950.00. So the day before he was to leave on his business trip, Green sold the wrecked vehicle and bought a new car.
Green later brought this action to recover for his damages. In addition to the above evidence, Green had four auto repairmen testify. The substance of their testimony was that the car had sustained a major wreck; that it could be rebuilt or repaired but it would never be the same car as before the accident. One witness testified that it was wrecked too badly to repair it for a customer. Of the repairmen who testified one purchased it from Green for $1,950.00; he sold it for $2,500.00 as parts to the second witness, who purchased it without discovering that the drive shaft was bent; however, after making that discovery, the second purchaser sold it to another (Ray Hamrick Auto Sales) for $3,-000.00. Hamrick repaired the car for sale, but as of October 1967 had been unable to sell it.
The trial court submitted to the jury the question of the amount of damages and the question of whether Green had prevented the insurer from exercising its option under the policy. The jury awarded Green $3,500.00 damages.
Appellant admits that there are no Florida cases in point, so it relies upon Williams v. Farm Bureau Mutual Insurance Company of Missouri[1] which involved a policy containing the same limits of liability with respect to repair as was contained in Auto-Owners’ policy. It was held that when there has been a timely and unequivocal exercise of insurer’s option to repair “the insurer becomes obligated so to restore the damaged automobile that, when returned to the insured, its function, appearance and value are substantially the same as they were immediately prior to the accident.”[2] In the Williams case Farm Bureau Mutual elected to have the two-year-old DeSoto repaired by a paint and trim shop at an estimated cost of $526.85. The owner insisted that repairs be made by a DeSoto dealer and refused to deliver the car to the paint shop without stating any valid objection. That case noted that there may be circumstances in which insured would be justified in refusing to honor the insurer’s exercise of its option, but since it was not shown that the paint shop’s repairs would not satisfy the exacting obligation assumed by the insurer — that is, substantial restoration as to function, appearance and value, — the insured (who traded the damaged car in on another) could recover only the lowest estimated cost of repairs.
Thus, it appears that it is not the law as stated in Williams that is so attractive to appellant, but it is the final outcome of that case. Both parties in the case sub judice apparently concede that the contractual undertaking of the insurer for damages due to collision is substantial restoration as to function, appearance and value. The appellant contends thát once it elected to repair, its insured had no choice but to permit the making of the repairs *32 which if later proven to fall short of substantial restoration of function, appearance and value, would entitle the insured to the difference between the reasonable market value prior to the accident and the reasonable market value after repairs. We do not agree.
This case presents precisely the factual circumstances referred to in Williams as justifying a refusal to honor the insurer’s decision to repair. The evidence here was that this almost new car had sustained a major accident and that Green was justified in refusing to authorize the insurance company to have North Florida Motors repair same because North Florida admitted that its proposed repairs would not restore the car to substantially the value and condition existing prior to the accident. Thus, in deciding whether Green prevented the insurer from exercising its option to repair, the jury necessarily had to determine whether the insurer ever proposed or offered to accomplish the obligation which it undertook by its policy.
The testimony relative to negotiations was in conflict. It was within the province of the jury to believe Green’s version. He testified that Auto-Owners requested him to sign a release; it insisted that upon electing to repair, its obligation was satisfied by having the car repaired; the question of hidden damages was discussed during negotiations, but he was left with the belief that “ * * * if I had gotten the car back [after repairs] and the car wasn’t right it would have been my responsibility.” Although the appraisal indicated there was a possibility of undisclosed damages, there was a complete absence of any evidence that the adjuster ever assured Green during the negotiations that Auto-Owners would assume the responsibility of restoring the car to substantially the same condition as existed before the accident. There was no evidence that the release was conditional upon the insurer fulfilling this obligation. The adjuster admitted the release was not even subject to a condition that insurer was responsible for hidden damages although he testified the insurer always assumed that reponsibility. We find that under these conditions and this type of so-called negotiation, the insured was not obligated to accept the proposed repair job.
The judgment is affirmed.
WIGGINTON, C. J., and CARROLL, DONALD K., J., concur.

. Williams v. Farm Bureau Mutual Ins. Co. of Mo., 299 S.W.2d 587 (Mo.App.1957).

. Id. at p. 589.