700 So.2d 161 (1997)
UNITED STATES FIRE INSURANCE COMPANY, Appellant,
v.
The MERIDIAN OF PALM BEACH CONDOMINIUM ASSOCIATION, INC., a Florida corporation, Appellee.
No. 96-1606.
District Court of Appeal of Florida, Fourth District.
October 15, 1997.
Robert M. Klein and Gary Khutorsky of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellant.
John R. Young of Boose Casey Ciklin Lubitz Martens McBane & O'Connell, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
POLEN, Judge.
We deny appellee's motion for rehearing, but withdraw our opinion of August 13, 1997, and substitute the following so as to correct two scrivener's errors that appeared in the prior opinion.
United States Fire Insurance Company (United) appeals from a final declaratory judgment entered in favor of The Meridian of Palm Beach Condominium Association, Inc. (Meridian) finding coverage under the property damage liability section of an excess insurance policy for defective design and construction by United's insured. We reverse.
The policy of insurance at issue provides coverage for "Property Damage Liability arising out of an occurrence." The insurance policy also includes the following pertinent definitions:
"Property Damage" means:
(a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom (A.9).
"Occurrence" means:
(a) with respect to ... Property Damage Liability, injurious exposure to conditions which results in Property Damage neither expected nor intended from the standpoint of the insured....
A recent case out of this court also addressing the issue of insurance coverage for defective construction involved a policy with similar language. In Lassiter Construction Co. v. American States, 699 So.2d 768 (Fla. 4th DCA 1997), that policy provided:
Under Coverage A. Bodily Injury and Property Damage Liability, the policy provides in part:
....
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"....

*162 "Occurrence," is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Under the Exclusions portion of the contract it is provided that the insurance does not apply to:
j. "Property damage" to:
....
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations....
In Lassiter, this court determined that the insured failed to demonstrate that any sections of the insurance policy provided coverage for defective construction. Based on the similarities in the policy language in Lassiter and in this case, we reach the same conclusion. As in Lassiter, we also recognize that the policy exclusions cannot create coverage where there is no coverage in the first place.
Our Lassiter opinion also notes agreement with the third district's opinion in Home Owners Warranty Corp. v. Hanover Insurance Co., 683 So.2d 527 (Fla. 3d DCA 1996), wherein it explained why these types of defective construction claims are not covered under general liability policies in Florida. We again note our agreement with that opinion. The following portion of Home Owners, quoting from the supreme court's opinion in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla.1980), is particularly persuasive in our determination that no coverage exists:
The majority view holds that the purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product.
Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws. We agree with the explanation of this type of coverage as stated by the Supreme Court of New Jersey in Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), in which it said:
An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case.
Home Owners, 683 So.2d at 529.
In accordance with the above cited opinions, we hold that the trial court erred in determining that the policy of insurance at issue provides coverage for the defective workmanship and construction of United's insured. We further agree with United that the opinions of Meridian's experts in interpreting the policy language should not have been relied on because there were no ambiguities in the insurance policy. See Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc., 541 So.2d 738 (Fla. 3d DCA), rev. denied 548 So.2d 662 (1989) (words used on face of contract must be ambiguous or unclear before extrinsic matters may be considered by court in interpreting contract). Thus, we reverse the opinion of the trial court and hold there was no coverage for defective workmanship under the excess policy of insurance provided by United.
WARNER and PARIENTE, JJ., concur.