788 So.2d 355 (2001)
Carole M. SIEGLE, Appellant,
v.
PROGRESSIVE CONSUMERS INSURANCE COMPANY, Appellee.
No. 4D00-1503.
District Court of Appeal of Florida, Fourth District.
June 13, 2001.
*357 Mike Peacock and W. Christian Hoyer of James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, Debra Brewer Hayes and Dennis Reich of Reich & Binstock, Houston, Texas, and Michael L. Sprain of the Sprain Law Firm, P.C., Houston, Texas, for appellant.
Douglas Stein and Francis A. Anania of Anania, Bandklayder, Blackwell, Baumgarten & Torricella, Miami, for appellee.
STEVENSON, J.
We sua sponte withdraw our May 2, 2001 opinion and issue the following in its place.
In this appeal, we must decide whether the insured is entitled to the "diminished market value" of her previously-wrecked automobile after the insurer elected to repair the vehicle under the parties' collision insurance contract. We hold that having restored Siegle's vehicle to its pre-accident level of performance, appearance and function, and having completed a top-notch repair, Progressive is not required to also compensate its insured for any remaining inherent diminution in value. Therefore, we affirm the trial court's dismissal of appellant's second amended complaint.
In 1997, the appellant, Carole M. Siegle, was involved in a car accident while driving her 1994 Acura. At the time of the collision, Siegle was insured by appellee, Progressive Consumers Insurance Company. As was its option under the insurance contract, Progressive elected to repair. Despite the quality of the repairs, Siegle contended that her vehicle suffered a reduction in market value of $2,677.19 by virtue of the fact that the car had been involved in a collision. When Progressive refused to pay this "inherent diminished value" loss, which Siegle defined as "the difference between the pre-loss value of the insured automobile and its value after it was repaired and returned," Siegle filed suit.[1] Siegle had no complaint with the quality of the work and agreed that Progressive repaired the vehicle "to the best of human ability." The trial court dismissed the complaint, finding that neither the insurance contract nor Florida law obligated Progressive to compensate Siegle for lost "market value."
Construction of the insurance contract and the determination of whether Florida law requires the insurer to provide coverage for diminished value are questions of law subject to de novo review on appeal. See State Farm Fire & Cas. Co. v. *358 Nickelson, 677 So.2d 37 (Fla. 1st DCA 1996). Nevertheless, we begin our analysis with the trial judge's reasoning. As support for her dismissal of the complaint, the trial judge relied on Morrison v. Allstate Indemnity, No. 98-377-CIVJ-20C, 1999 WL 817660 (M.D.Fla. Sept.9, 1999).[2] While the Morrison court dismissed the plaintiffs' claim for inherent diminished value, it did so on the ground that there was no Florida law on this issue and absent a "clear dictate" from the Florida courts, the federal court would not impose this obligation upon an insurer. Thus, Morrison is not dispositive; we must examine the policy and relevant case law.
The parties' insurance contract provides in relevant part:
PAYMENT OF LOSS
We may pay the loss in money or repair or replace damaged or stolen property with other of like kind and quality....
. . . .
LIMITS OF LIABILITY
Our limit of liability for loss shall not exceed the lesser of:
1. the actual cash value of the stolen or damaged property less the applicable deductible shown in the Declarations;
2. the amount necessary to repair or replace the property with other of the like kind and quality less the applicable deductible shown in the Declarations; or
3. the amount stated in the Declarations page of this policy.
In sum, under the collision damage provisions of the policy, Progressive is obligated to pay for "loss" caused by collision. "Loss" is defined in the policy as "direct and accidental loss of or damage to" the insured vehicle. The insurer has the option of paying the "loss" in money or by repairing or replacing damaged or stolen property with other "of like kind and quality." The policy limits Progressive's liability to the lesser of the actual cash value of the damaged property or the amount necessary to repair or replace the property "with other of like kind and quality." Thus, like many such policies, Progressive may elect to replace the vehicle or repair it, depending on which option is most economical.
It is from this policy language that appellant argues that Progressive, in electing to repair, is required to restore the vehicle to its pre-accident "value," even though the repairs may be physically adequate in every respect. If there is any loss in market value after the repairs have been completed, appellant argues that the policy requires Progressive to pay that diminished value:
Loss in value is part of the entire loss. The loss in value occurs when the vehicle is damaged. Although repairs may reduce loss, they may not eliminate it. Unless Appellee compensates Appellant for this deficiency, it has not fulfilled its obligation to indemnify its insured for the loss and to restore him to his pre-loss condition.[3]
Appellant's reasoning is three-fold. First, appellant argues that from a plain reading of the policy, loss in value is a "loss" and should be compensated under Progressive's obligation to pay for damage *359 to the automobile. Appellant buttresses this argument with her claim that, under Florida law, the term "repair" has been interpreted as an obligation that an insurer restore the covered vehicle to its pre-accident "function, appearance and value." Second, citing Florida law which provides that exclusions from coverage must be precise and clearly stated, appellant argues that, since the policy does not specifically exclude loss in value, Progressive should be required to pay for it. Third, appellant argues that, at the very least, the policy language is ambiguous such that the phrase "repair ... with other of like kind and quality" could, by reasonable interpretation, be understood to cover diminished market value after the repair.
Siegle cites Auto-Owners Insurance Co. v. Green, 220 So.2d 29 (Fla. 1st DCA 1969), and Arch Roberts & Co. v. Auto-Owners Insurance Co., 305 So.2d 882 (Fla. 1st DCA 1974), to support her contention that the law in Florida is that the term "repair" means that an automobile insurer is obligated to restore a collision-damaged vehicle to its pre-accident function, appearance and value. In our view, these cases lend only minimal and unpersuasive support to appellant's position.
In Green, the issue was whether the insured was obligated to allow the insurer to repair the damaged automobile and sign a release after the insurer had paid only the estimated repair costs, making no provision for any hidden damages and assuming no obligation to restore the car to its pre-accident condition. The insurer's obligation to restore the vehicle to its pre-accident condition and value following election of the option to repair was conceded. See 220 So.2d at 31. Then, several years later, the Arch Roberts panel cited Green for the proposition that "the contractual undertaking of the insurer for damages due to collision is substantial restoration as to function, appearance and value," despite the fact that the principle was not the holding of Green but only the agreement of the parties. 305 So.2d at 883. Moreover, the holding in Arch Roberts was that, having deprived the insurer of the opportunity to repair the vehicle, the insurer's liability was limited to the estimated cost of repair. As in Green, the issue in Arch Roberts did not require the panel to decide whether the insurer must repair and compensate for any inherent diminished value.
We start with the basic legal principle in Florida that the scope and extent of insurance coverage is defined by the language and terms of the policy. See, e.g., Union Am. Ins. Co. v. Maynard, 752 So.2d 1266, 1268 (Fla. 4th DCA 2000); United States Fire Ins. Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d DCA 1976). Where the language of the policy is plain and unambiguous, "there is not need for judicial construction and the contract must be enforced as written." Fla. Power & Light Co. v. Penn Am. Ins. Co., 654 So.2d 276, 278 (Fla. 4th DCA 1995)(citing Great Global Assurance Co. v. Shoemaker, 599 So.2d 1036 (Fla. 4th DCA 1992)). Any ambiguities in insurance policy contracts are interpreted liberally in favor of the insured and strictly against the insurer. See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993). Lastly, we note that exclusions from coverage must be clearly defined. See Liberty Mut. Ins. Co. v. Capeletti Bros., Inc., 699 So.2d 736, 738 (Fla. 3d DCA 1997).
We affirm the trial judge's ruling and reject appellant's claim for coverage. Here, we must focus on the phrase "repair ... with other of like kind and quality." Words and phrases in an insurance policy, when not specifically defined therein, "must be given their everyday meaning and read in light of the skill and *360 experience of ordinary people." Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d 636, 638 (Fla. 3d DCA 1994). In construing words in insurance policies, it is appropriate for courts to turn to legal and non-legal dictionaries for common meanings. See Gov't Employees Ins. Co. v. Novak, 453 So.2d 1116, 1118 (Fla.1984)(using Webster's Third New International Dictionary to construe the term "accident" in the context of an insurance automobile policy and the Florida Motor Vehicle No Fault Law). Turning to the instant case, (1) to "repair" is to "restore to a good condition"; (2) "kind" refers to the "essential quality or character" of a thing; and (3) "quality" means the "peculiar and essential nature" of a thing or can connote a "degree of excellence." THE MERRIAM WEBSTER DICTIONARY 410, 596, 621 (1994 ed.). A repair with like kind and quality would thus require the property to be restored to good condition with parts, equipment and workmanship of the same essential character, nature and degree of excellence which existed on the vehicle prior to the accident.[4] The damaged vehicle may or may not be returned to its pre-accident market value, but a return to market value is not what the words "repair" with "like kind and quality" commonly connote and is not what an ordinary insured would reasonably understand the phrase to mean. The psychology of the market place, which assigns a lesser value to an adequately and competently repaired vehicle, has nothing to do with the "quality" of the repair itself.
We agree with the holding in Carlton v. Trinity Universal Insurance Co., 32 S.W.3d 454 (Tex.App.2000), and with its analysis of the term "repair." There, the insured vehicle was stolen, suffering physical damage as well as the addition of 3,500 miles as the result of the theft. The policy included the same limitations of liability found in the instant case. After the vehicle was recovered, the insurer elected to fulfill its obligation under the policy by repair of the vehicle. The insured had no complaints regarding the extent, nature, or quality of the repairs made. Despite his lack of complaints in this regard, following its refusal to also compensate him for inherent diminished value, which he defined as "the difference between the pre-loss value of the insured automobile and its value after [the insurer] repaired it and returned it to him," the insured filed suit. Id. at 456-57. Applying rules of contract construction akin to those used in Florida, the Texas Appellate Court sided with the insurer and affirmed the lower court's summary judgment in its favor:
In common usage, "repair" means "to restore by replacing a part or putting together what is torn or broken" or, stated slightly differently, "[t]o bring back to good or usable condition." There is no concept of "value" in the ordinary meaning of the word. Ascribing to the words "repair or replace" an obligation to compensate the insured for things [i.e., diminution in value] which, by their very nature, cannot be "repaired" or "replaced" would violate the most fundamental rules of contract construction. If there is a single guiding principle that governs our interpretation of the insuring agreement, it is to give effect to the parties' intent as expressed in the plain language of the written policy. Therefore, we must conclude that the limit of liability provision means what it says.
We hold that where an insurer has fully, completely, and adequately "repaired *361 or replaced the property with other of like kind and quality," any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement. Under the "repair or replace" provision of the policy's limit of liability, the insurer's liability is capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed immediately before the loss.
Id. at 464-65 (footnotes and citations omitted).
Additionally, in the instant case, we find that the language of the policy simply does not obligate Progressive to both complete a quality, first-rate repair of the vehicle and pay money to the insured. Here, the insurance contract provides that Progressive may fulfill its contractual obligation in any one of three ways: (1) replace the damaged vehicle "with other of like kind and quality"; (2) repair the vehicle; or (3) compensate the insured in money for the cost of the repair or replacement. These methods for compensation for the loss are set forth in the alternative, i.e., if Progressive elects to repair then it is not also obligated to pay the loss in money or to replace the property with one of like kind. To adopt the construction of the policy advanced by appellant would require that these methods of compensating for the loss be cumulative, i.e., Progressive could be required to both repair the vehicle and compensate the insured for the loss in money. The policy makes no allowance for this dual method of compensation for the insured's loss.
We find no ambiguity in the policy, and we have no exclusion to narrowly tailor. In our view, a finding that Progressive must repair the vehicle competently and properly, and then also compensate the insured for any diminution in value that remains by virtue of the simple fact that the vehicle was involved in the collision in the first place, would substantially re-write the insurance contract. This, we cannot do. See Duncan Auto Realty, Ltd. v. Allstate Ins. Co., 754 So.2d 863, 864 (Fla. 3d DCA 2000)(stating that "courts have no power to create insurance coverage where none otherwise exists"). Under the policy, Progressive may respond to any "loss" by replacing or repairing. If Progressive elects to repair, there is no reading of the policy which also obligates Progressive to pay the loss in money. Furthermore, Siegle's additional claimed lossinherent diminution in market valueis simply not the type of damage that is subject to repair and, thus, is not a covered loss where the policy limits the insurer's liability to the amount necessary to repair the vehicle. A court is obligated to interpret a contract in a manner which accords with reason and renders the contract meaningful. See State Farm Fire & Cas. Co. v. Licea, 685 So.2d 1285, 1287 (Fla.1996); Triple E Dev. Co. v. Floridagold Citrus Corp., 51 So.2d 435, 438-39 (Fla.1951).
Although we believe that the language of the policy requires us to side with Progressive in the instant case, in so doing, we are aware that the authorities across the nation are split on this issue. In the context of similar contract language, an apparent majority of courts have concluded that coverage for diminished value is required either because of the plain meaning of the policy or based on a finding that the language is ambiguous. See, e.g., MFA Ins. Co. v. Citizens Nat'l Bank of Hope, 260 Ark. 849, 545 S.W.2d 70 (1977); Hyden v. Farmers Ins. Exch., 20 P.3d 1222 (Colo. Ct.App.2000); Delledonne v. State Farm Mut. Auto. Ins. Co., 621 A.2d 350 (Del.Super.Ct.1992); Senter v. Tenn. Farmers *362 Mut. Ins. Co., 702 S.W.2d 175 (Tenn.Ct. App.1985). For example in Hyden v. Farmers Ins. Exchange, the court stated:
... Farmers explained that the "of like kind and quality" phrase obliged it only to return the Jeep to plaintiff in "substantially the same condition as it was before the accident." Yet, according to one leading commentator, "A vehicle is not restored to substantially the same condition if repairs leave the market value of the vehicle substantially less than the value immediately before the collision." L. Russ, Couch on Insurance 3D § 175:47 at 175-54 (1998). We agree with this commentator.
The phrase "of like kind and quality" does not, in our view, unambiguously support Farmers' position that it was obligated only to restore plaintiff's Jeep to a functioning capacity. Indeed, the term "quality" can have a meaning different from the word "kind," Webster's Ninth New Collegiate Dictionary 661 & 963 (1991), and it often conveys "a degree of excellence" or "a superiority in kind." Webster's Ninth New Collegiate Dictionary 963 (1991). Because the words "kind" and "quality" are joined together by "and" rather than by "or," ordinary purchasers of insurance could reasonably expect Farmers to provide them with vehicles substantially equivalent in both function and value to those which they drove prior to any accidents.
Id. at 1225.
Other courts, like the Texas court in Carlton, have concluded that the language in these types of policies is not ambiguous and simply does not obligate the insurer to pay for reduction in market value after completing a quality repair job. See, e.g., Rezevskis v. Aries Ins. Co., 784 So.2d 472 (Fla. 3d DCA 2001)(adopting the rationale expressed in Carlton); Johnson v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 1, 754 P.2d 330 (Ariz.Ct.App.1988); Ray v. Farmers Ins. Exch., 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988).
Because of the significance of this issue and the large number of insurance policies written in this state which may contain similar language, we certify the following question to the Florida Supreme Court as one of great public importance:
Does an automobile collision policy which provides that the insurer must repair or replace the damaged vehicle "with other of like kind and quality" obligate the insurer to compensate the insured in money for any diminution in market value after the insurer completes a first-rate repair which returns the vehicle to its pre-accident level of performance, appearance and function?
AFFIRMED.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] In the complaint, Siegle purports to bring the suit as a class action on behalf of similarly situated insureds. There is nothing in the record, however, indicating that a class was ever certified. See Fla. R. Civ. P. 1.220.
[2] Following the dismissal, the insureds appealed. The Eleventh Circuit never reached the merits, finding that it did not appear that the district court had subject matter jurisdiction and remanding the case to afford the plaintiffs the opportunity to establish jurisdiction. See Morrison v. Allstate Indem. Co., 228 F.3d 1255 (11th Cir.2000).
[3] Appellant's initial brief, page 11.
[4] A repair can only be accomplished by workmanship which utilizes the laborer's skill, and any parts, supplies and equipment required for the restoration.