819 So.2d 732 (2002)
Carole M. SIEGLE, Petitioner,
v.
PROGRESSIVE CONSUMERS INSURANCE COMPANY, Respondent.
No. SC01-1219.
Supreme Court of Florida.
May 23, 2002.
*733 Mike Peacock and W. Christian Hoyer of James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, for Petitioner.
Francis A. Anania and Douglas H. Stein of Anania, Bandklayder, Blackwell, Baumgarten & Torricella, Miami, FL; and Barry Richard of Greenberg, Traurig, P.A., Tallahassee, FL, for Respondent.
LEWIS, J.
We have for review a decision of the Fourth District Court of Appeal on the following question, which the court certified to be of great public importance:
Does an automobile collision policy which provides that the insurer must repair or replace the damaged vehicle "with other of like kind and quality" obligate the insurer to compensate the insured in money for any diminution in market value after the insurer completes a first-rate repair which returns the vehicle to its pre-accident level of performance, appearance, and function?
Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 362 (Fla. 4th DCA 2001). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

Facts
In 1997, the petitioner, Carole M. Siegle, was involved in an automobile accident. See Siegle, 788 So.2d at 357. At the time of the accident, she was insured by the respondent, Progressive Consumers Insurance Company ("Progressive"), under a contract of insurance containing the following provisions:
PART IV-AUTO DAMAGE COVERAGE
If you pay a specific premium for Auto Damage Coverage, we will pay for loss to your insured auto or its equipment caused by:

*734 Coverage E-Collision
Coverage D-Comprehensive
less any applicable deductibles for each separate loss.
. . . .
PAYMENT OF LOSS
We may pay the loss in money or repair or replace damaged or stolen property with other of like kind and quality.
. . . .
As used in this PART:
2. "Loss" means direct and accidental loss of or damage to your insured auto, including its equipment.
. . . .
LIMITS OF LIABILITY
Our limit of liability for loss shall not exceed the lesser of:
1. the actual cash value of the stolen or damaged property ...
2. the amount necessary to repair or replace the property with other of the like kind and quality ...
3. the amount stated in the Declarations page of this policy.
As was its option, Progressive elected to repair Siegle's car.
Despite the petitioner's complete satisfaction with the repairs,[1] she filed the instant cause of action for breach of contract seeking the recovery of the "inherent diminished value" caused to her auto by the collision. See id. at 357. Petitioner defined inherent diminished value as "the difference between the pre-loss value of the insured automobile and its value after it was repaired and returned." Citing Morrison v. Allstate Indemnity Co., No. 98-377-Civ-J-20c (M.D.Fla. Sept. 9, 1999), the trial court dismissed Petitioner's complaint with prejudice.
On appeal, the Fourth District quoted extensively from Carlton v. Trinity Universal Insurance Co., 32 S.W.3d 454 (Tex. App.2000), and stated:
We hold that where an insurer has fully, completely, and adequately "repaired or replaced the property with other of like kind and quality," any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement....
Additionally, in the instant case, we find that the language of the policy simply does not obligate Progressive to both complete a quality, first-rate repair of the vehicle and pay money to the insured.... These methods for compensation for the loss are set forth in the alternative....
Siegle, 788 So.2d at 360-61. The court affirmed the trial court's dismissal of Petitioner's complaint, and also certified the above-stated question to this Court as one of great public importance.

Analysis
As this cause comes to us from a trial court order of dismissal, two important principles govern our review. First, "[w]hether a complaint is sufficient to state a cause of action is an issue of law." W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297, 300 (Fla. 1st DCA 1999). Consequently, the ruling below is subject to de novo review. See id. Additionally, when presented with a motion to dismiss, a trial court is required to "treat the factual allegations of the complaint as true and to consider those allegations in the light most favorable to the *735 plaintiffs." Hollywood Lakes Section Civic Ass'n, Inc. v. City of Hollywood, 676 So.2d 500, 501 (Fla. 4th DCA 1996) (citing Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1030 (Fla. 4th DCA 1994)).
In furtherance of her claim, Siegle contends that the instant policy language is ambiguous, resulting in a triggering of the rule that "[a]mbiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." Prudential Property & Casualty Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). The ambiguity, Petitioner asserts, is a result of Progressive's failure to define the terms "repair," "replace," or "like kind and quality." It is well settled, however, that an insurance contract is to be construed in accordance with the plain language of the policy. See Swindal, 622 So.2d at 470; Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla. 1975); Poole v. Travelers Ins. Co., 130 Fla. 806, 179 So. 138, 141-42 (1937). Thus, it is only where courts first determine that policy language is ambiguous that contractual language is to be construed in favor of the insured. When an insurance contract is not ambiguous, it must be given effect as written. See State Farm Fire & Cas. Co. v. Oliveras, 441 So.2d 175, 178 (Fla. 4th DCA 1983).
A number of opinions from other jurisdictions have spoken directly to the issue as to whether the contract terms complained of by the petitioner here create ambiguity within the policy. Of those, only the Superior Court of Delaware deemed the language ambiguous. See Delledonne v. State Farm Mut. Auto. Ins. Co., 621 A.2d 350 (Del.Super.Ct.1992). In 2001, however, the Delaware Supreme Court held that "[t]he Delledonne Court... incorrectly stated Delaware law by finding that the existence of two separate and distinct lines of authority in the interpretation of similar policy language is evidence of ambiguity." O'Brien v. Progressive Northern Ins. Co., 785 A.2d 281, 289 (Del.2001). Thus, no court has explicitly found the contract language at issue in the instant case to be ambiguous.
Other jurisdictions have specifically deemed the language in question here unambiguous. Most recently, in analyzing the language before us in the instant case, the Missouri Court of Appeals, Eastern District, stated: "[T]hese provisions direct a layman as to what they are entitled to under those provisions. We find no ambiguity in the relevant provisions in the policy." Camden v. State Farm Mut. Auto. Ins. Co., 66 S.W.3d 78, 81 (Mo.Ct.App. 2001). Courts in Arizona, California, Louisiana, and Massachusetts have also deemed the disputed contract language unambiguous.[2] Finally, the district court below definitively stated: "We find no ambiguity in the policy, and we have no exclusion to narrowly tailor." Siegle, 788 So.2d at 361.
In the instant case, the petitioner asserts that Progressive's use of the terms "repair," "replace," and "like kind and quality" creates an ambiguity in the policy. Since these terms create ambiguity, Siegle argues, this Court should interpret the term "loss" to include diminished value. It is clear, however, that these terms are utterly unambiguous. The policy language reads:

*736 LIMITS OF LIABILITY
Our limit of liability for loss shall not exceed the lesser of:
1. the actual cash value of the stolen or damaged property ...
2. the amount necessary to repair or replace the property with other of the like kind and quality ...
3. the amount stated in the Declarations page of this policy.
Within this context, "repair" means "to restore by replacing a part or putting together what is torn or broken." Merriam-Webster's Collegiate Dictionary 991 (10th ed.1999). As stated by the Fourth District in General Accident Fire & Life Assurance Corp. v. Liberty Mutual Insurance Co., 260 So.2d 249 (Fla. 4th DCA 1972),
terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction.
Id. at 253. Therefore, we conclude that "repair," as used in the instant contract of insurance, is not ambiguous.
Likewise, Progressive's use of "replace" in the contract was only intended to mean that the insurer would "restore [the insured's automobile] to a former place or position," or "take the place of ... as a substitute or successor." Merriam-Webster's Collegiate Dictionary 992 (10th ed.1999). Finally, "of like kind and quality" is properly interpreted to require that the insurer place the insured in possession of a car "the same or nearly the same" as the damaged auto, in terms of the "fundamental nature" and "degree of excellence" of the automobile. Id. at 674, 642-43, 955. As used by Progressive, the meanings of both "replace" and "of like kind and quality" are unambiguous and clear. See Nateman v. Hartford Cas. Ins. Co., 544 So.2d 1026, 1028 (Fla. 3d DCA 1989) ("When a policy provision remains undefined, common everyday usage determines its meaning."). Based upon an analysis of the policy language here, it is clear that the contract terms are not ambiguous, and the petitioner's argument is without merit.
Based upon our conclusion that the terms of the instant contract of insurance are unambiguous, we turn now to the petitioner's assertion that the policy language should be interpreted to cover diminished value. All three District Courts of Appeal that have been faced with the issue before us today have held that the disputed policy language does not provide coverage for diminished value. In Rezevskis v. Aries Insurance Co., 784 So.2d 472 (Fla. 3d DCA 2001), the court stated:
Pursuant to the "repair or replace" limitation of liability in the Aries policy, the insurer's responsibility is limited to the amount necessary to return the car to substantially the same condition as before the loss. Nowhere does that obligation include liability for loss due to "a stigma on resale resulting from `market psychology'" .... The Aries policy's express provision that the insurer's responsibility is limited in the amount necessary to "repair or replace" permits no other reasonable interpretation. Thus, the diminished value resulting from damage not susceptible to repair or replacement does not fall within the insurer's obligation under the policy.
Id. at 474. Likewise, in the instant case, the court below held:
Additionally, in the instant case, we find that the language of the policy simply does not obligate Progressive to both complete a quality, first-rate repair of the vehicle and pay money to the insured.... [The] methods for compensation *737 for the loss are set forth in the alternative, i.e., if Progressive elects to repair then it is not also obligated to pay the loss in money or to replace the property with one of like kind. To adopt the construction of the policy advanced by appellant would require that these methods of compensating for the loss be cumulative. The policy makes no allowance for this dual method of compensation for the insured's loss.
Siegle, 788 So.2d at 361. Finally, in another recent opinion, the Second District simply stated: "We adopt the policy set forth in those two opinions [Rezevskis and Siegle] and find that the insurance policy in this case did not require payment for the diminished value of Mr. Smith's fully repaired vehicle." Smith v. Superior Ins. Co., 802 So.2d 424, 425 (Fla. 2d DCA 2001).
In Rezevskis, the court interpreted policy language identical to the disputed contractual text in the instant case. See Rezevskis, 784 So.2d at 473. In Smith, the policy language differed only marginally. See Smith, 802 So.2d at 425. Clearly, however, each of these three courts determined that a proper reading of the policy language provided no coverage for the diminished value of the plaintiffs' vehicles.
In support for its claim that the policy language here should be construed to cover diminished value, Petitioner cites Arch Roberts & Co. v. Auto-Owners Insurance Co., 305 So.2d 882 (Fla. 1st DCA 1974), Auto-Owners Insurance Co. v. Green, 220 So.2d 29 (Fla. 1st DCA 1969), and Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So.2d 311 (Fla. 4th DCA 1998). We find, however, that a cursory examination of these cases reveals that they are either simply inapposite here or not persuasive.
In Green, "[b]oth parties ... concede[d] that the contractual undertaking of the insurer for damages due to a collision is substantial restoration as to function, appearance, and value." 220 So.2d at 31 (emphasis added). The issue before the court in Green was whether, under the insurance contract, the insurer could force the insured to accept uncertain repairs and release all further claims against the insurer. See id. As the defendant insurance company in Green conceded precisely what is at issue in the instant case, and the dispute in Green revolved around an issue not presented here, this case has no impact upon the instant action.
In Arch Roberts, the insurer offered to repair an insured auto and the insured refused the offer. The issue before the court was whether the insurance company had fulfilled its obligation under the policy by making an unsuccessful offer to repair. See Arch Roberts, 305 So.2d at 883. The court held that the plaintiff insured had prevented the insurance company from exercising its option to repair the car, and thus could not recover. See id. Along with this holding, however, the court did state:
Upon making that election [to repair] it was then obligated to restore it to substantially the same condition as to function, appearance, and value as existed before the accident. Should it fail to do so, it would then be liable to the owner for its value immediately prior to the accident.
Id. at 884 (emphasis added). This dicta may be used to suggest that the First District's definition of "repair" apparently would include the concept of diminished value.
Finally, the petitioner relies upon Corgnati, based upon the court's inclusion of diminished value in the plaintiff's recoverable damages there. See Corgnati, 715 So.2d at 314. This case, however, is easily distinguished. In Corgnati, the district *738 court was interpreting the Deceptive and Unfair Trade Practices Act, under which
the measure of actual damages is the difference in market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.
Id. at 314. In Corgnati, the court was construing the language of a consumer protection statute, the damages provisions of which contemplated compensation for diminished value. See id. Here, by contrast, we must determine whether an insurance policy's text covers the non-repairable diminished value of an automobile. Corgnati is inapposite to that inquiry.
While it is undeniable that the panel deciding Arch Roberts may have included compensation for diminished value within the concept of "repair," this conclusion, in our view, is not supported by proper reasoning or authorities. We do not find Arch Roberts, Green, or Corgnati persuasive.
An examination of cases from sister jurisdictions reveals a nationwide split of authority. When interpreting the contractual language at issue here, some courts have found diminished value a covered loss despite the liability-limiting repair provision, while others have read the provision to foreclose recovery for diminished value. A number of jurisdictions seemingly ignore the limitation of the insurer's liability under the insurance contract to the cost of repairs, and simply deem the "proper measure of damages" a comparison of the car's market value prior to and after the losscausing event.[3] Additionally, two states seemingly adopt the position that the term "repair or replace" is grounded in perceptions of monetary value, as opposed to physical functionality. Each of these decisions concludes that, "It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car." Dunmire Motor Co. v. Or. Mut. Fire Ins. Co., 166 Or. 690, 114 P.2d 1005, 1009 (1941); see also Campbell v. Calvert Fire Ins. Co., 234 S.C. 583, 109 S.E.2d 572 (1959). We respectfully decline to join the jurisdictions finding that the instant contract of insurance covers diminished value-this conclusion simply requires either ignoring the policies' language, or giving the contracts' text a meaning that the drafters never intended. Instead, we agree with the large number of courts that have concluded that diminished value is not covered.[4]
*739 In Florida, insurance contracts are construed in accordance with the plain language of the policies. See Swindal, 622 So.2d at 470. Furthermore,
When possible, courts should give effect to each provision of a written instrument in order to ascertain the true meaning of the instrument. Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions.
Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433, 435 (Fla. 5th DCA 1998) (citation omitted). Thus, our review must include a close reading of the policy provisions at issue in the instant case, and an attempt to construe the contractual language in a manner which gives all the provisions effect.
In its most pure form, the instant disagreement centers on what interpretation is to be given the following two passages:
PAYMENT OF LOSS
We may pay the loss in money or repair or replace damaged or stolen property with other of like kind and quality.
LIMITS OF LIABILITY
Our limit of liability for loss shall not exceed the lesser of:
1. the actual cash value of the stolen or damaged property ...
2. the amount necessary to repair or replace the property with other of the like kind and quality ...
3. the amount stated in the Declarations page of this policy.
Clearly, the intent of the drafter of these provisions was to provide the insurer with two options upon the occurrence of a "loss." The insurer could reimburse the insured through money payment, or it could pay to repair or replace the automobile. If, as here, the repair option was chosen, the insurer's liability was limited to the monetary amount necessary to repair the car's function and appearance, commensurate with the condition of the auto prior to the loss.
Proper interpretation of the policy language at hand requires that we deem diminished value a loss not covered by this policy. Acceptance of the petitioner's position that the proper definition of "repair" includes compensation for lost value would negate the insurer's choice of remedy explicitly contained in the contractual text, an action directly counter to Inter-Active. If we accepted the petitioner's arguments, even where the insurer chose to repair an insured vehicle, thereby limiting its liability to the cost of repair or replacement, it would be bound to also pay a portion of the car's cash valuea "strained, forced, [and] unrealistic construction" in violation of long-standing contractual interpretation principles. Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co., 260 So.2d at 253.
As no coverage for diminished value exists under this contract of insurance, this Court certainly cannot create coverage "out of whole cloth." Pastori v. Commercial Union Ins. Co., 473 So.2d 40, 41 (Fla. 3d DCA 1985); see also Duncan Auto Realty, Ltd. v. Allstate Ins. Co., 754 So.2d 863, 864-65 (Fla. 3d DCA 2000). In contract interpretation cases, the issue to be addressed is not what this Court or the petitioner would prefer that the policy cover, but what losses the mutually agreedupon contractual language covers. Thus, even if we were inclined to do so, we could not interpret the policy in accordance with the petitioner's assertions. The contract of insurance before us clearly does not cover a covered automobile's loss of value due to an accident. Should parties in the petitioner's situation wish to obtain coverage *740 for diminishment in value due to accident, they may either contract for the coverage initially, or urge the Legislature to mandate coverage through the enactment of a statute. Certainly, however, we cannot manufacture coverage that does not exist. We recognize that one may sustain an economic value loss when the repair of damage is perfect in every respect. However, the existence of an element of loss does not transform a contract into providing coverage when that item is clearly not subject to payment under the policy.
Finally, the petitioner asserts that the absence of an exclusion from coverage for diminished value should cause this Court to find coverage here. This argument, however, is directly contrary to the tenets of insurance contract interpretation, as well as the Fourth District's decision in United States Fire Insurance Company v. Meridian of Palm Beach Condominium Association, Inc., 700 So.2d 161 (Fla. 4th DCA 1997). There, the court held that "policy exclusions cannot create coverage where there is no coverage in the first place." Id. at 162; see also Lassiter Constr. Co. v. American States Ins. Co., 699 So.2d 768, 770 (Fla. 4th DCA 1997). This statement of the law is undeniable the existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss. As a result, this argument is entirely without merit.

Conclusion
Based upon the foregoing, we approve the decision of the court below and answer the certified question in the negative.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and QUINCE, JJ., concur.
PARIENTE, J., concurs in result only.
NOTES
[1] Siegle "had no complaint with the quality of the work and agreed that Progressive repaired the vehicle `to the best of human ability.'" Siegle, 788 So.2d at 357.
[2] See Johnson v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 1, 754 P.2d 330, 331 (Ct.App. 1988); Ray v. Farmers Ins. Exch., 200 Cal. App.3d 1411, 246 Cal.Rptr. 593, 595 (1988); Townsend v. State Farm Mut. Auto. Ins. Co., 793 So.2d 473, 480-81 (La.Ct.App.2001); Roth v. Arnica Mut. Ins. Co., No. 98-3551 (Mass.Super.Ct. Aug. 3, 1999) (unpublished opinion).
[3] See MFA Ins. Co. v. Citizens Nat'l Bank of Hope, 260 Ark. 849, 545 S.W.2d 70 (1977); State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 556 S.E.2d 114 (2001); Dodson Aviation, Inc. v. Rollins, Burdick, Hunter of Kan., Inc., 15 Kan.App.2d 314, 807 P.2d 1319 (1991); Edwards v. Md. Motorcar Ins. Co., 204 A.D. 174, 197 N.Y.S. 460 (N.Y.App.Div.1922).
[4] See Johnson v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 1, 754 P.2d 330 (Ct.App.1988); Ray v. Farmers Ins. Exch., 200 Cal.App.3d 1411, 246 Cal.Rptr. 593, 596 (1988); O'Brien v. Progressive Northern Ins. Co., Nos. 99C-05-033-FSS & 99C-07-325-FSS (Del.Super.Ct.2000), aff'd, 785 A.2d 281 (Del.2001); Gen. Accident Fire & Life Assurance Corp. v. Judd, 400 S.W.2d 685 (Ky.1966); Townsend v. State Farm Mut. Auto. Ins. Co., 793 So.2d 473 (La.Ct.App.2001); Roth v. Arnica Mut. Ins. Co., No. 98-3551 (Mass.Super.Ct. Aug. 3, 1999); Camden v. State Farm Mut. Auto. Ins. Co., 66 S.W.3d 78 (Mo.Ct.App.2001); Kent v. Cincinnati Ins. Co., No. CA2001-04-100 (Ohio Ct.App. Dec. 10 2001); Munoz v. Allstate Ins. Co., No. 9906-2855 (Pa.Ct.Comm.Pl. Nov. 15, 1999) (unpublished opinion) (holding that under Pennsylvania's "reasonable expectations" standard, diminished value recovery was not reasonable); Grubbs v. Foremost Ins. Co., 82 S.D. 98, 141 N.W.2d 777 (1966); Carlton v. Trinity Universal Ins. Co., 32 S.W.3d 454 (Tex.App.2000); Bickel v. Nationwide Mut. Ins. Co., 206 Va. 419, 143 S.E.2d 903 (1965).