534 So.2d 834 (1988)
TREASURE SALVORS, INC., Armada Research, Inc., and Melvin A. Fisher, Appellants,
v.
Louis TILLEY and Madeline P. Tilley, Husband and Wife, Appellees.
No. 88-94.
District Court of Appeal of Florida, Second District.
November 30, 1988.
*835 David Paul Horan of David Paul Horan & Associates, P.A., Key West, for appellants.
Wade H. Parsons of Wade H. Parsons, P.A., Fort Myers, for appellees.
SCHOONOVER, Judge.
The appellants, Treasure Salvors, Inc., Armada Research, Inc., and Melvin A. Fisher, challenge a final judgment in a breach of contract action. We find that the trial court erred in construing the termination provision of the contract and, accordingly, reverse.
On June 16, 1972, the appellees, Louis and Madeline P. Tilley, entered into a written contract with Armada, a wholly owned subsidiary of Treasure Salvors. Fisher is the president of both Treasure Salvors and Armada. In exchange for a $12,500 investment, the contract entitled the appellees to receive, subject to the rights of the State of Florida, a one-fourth per cent interest in all treasure recovered from a certain salvage operation being conducted by Armada.
After a dispute arose concerning the termination date of the contract, the appellees filed a breach of contract action against the appellants. The appellees contended that paragraph three of the contract determined its duration and that under this provision they had rights in any treasure recovered "until operations were no longer profitable." Paragraph three of the contract provides:
3. ARMADA has located the remains of a Spanish Galleon believed to be either the "Atocha" or the "Margarita" in its lease E26A. ARMADA agrees to pursue search and salvage operations with its salvage equipment in the lease area near Marquesas Key, until January 1, 1975 or until operations are no longer profitable, in an attempt to salvage the treasure ships "Atocha" and "Margarita" which ARMADA believes to be located within the area... .
The appellants contended that paragraph nine of the contract controlled and that, therefore, because of a written extension, *836 the contract terminated on January 1, 1979. Paragraph nine of the contract provides:
9. This Agreement expires January 1, 1975, unless mutually extended by written agreement at that time.
At a nonjury trial, the court found that the contract was ambiguous and, therefore, construed it against the drafter, the appellants. The court concluded that the contract remained valid and in force until salvage operations were no longer profitable and entered a final judgment for the appellees. This timely appeal followed.
We agree with the appellants' contention that the court erred in determining that the contract was ambiguous and then applying the rule that a contract must be construed against the draftsman. This rule should only be applied when a genuine inconsistency, uncertainty, or ambiguity remains after resort to the ordinary rules of contract construction. Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla. 1979). Applying the ordinary rules of construction, we find that the contract is unambiguous and that the parties' intention can be deduced from the face of the document. Thus, the trial court also erred in allowing parol evidence to elucidate, explain or clarify the intention of the parties. Royal American Realty, Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968).
In construing a contract, we must not only look to the entire document and adopt a reasonable interpretation of it, American Medical Intern. v. Scheller, 462 So.2d 1 (Fla. 4th DCA 1984), cert. denied, 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985), but must also give effect to every provision in a contract and reconcile apparent inconsistencies if possible. Excelsior; Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313 (Fla. 2d DCA 1963). Paragraph three of the contract requires the appellants to pursue search and salvage operations until January 1, 1975, or until operations are no longer profitable. Paragraph nine provides that the contract expired on January 1, 1975, unless mutually extended. If we were to interpret paragraph three as extending the contract beyond January 1, 1975, until salvage operations were no longer profitable, the specific date in paragraph three and all of paragraph nine would be meaningless. On the other hand, by giving meaning to both provisions, and adopting a reasonable interpretation, it becomes clear that the contract was to remain in force until January 1, 1975, unless salvage operations became unprofitable prior to that date. See American Medical Intern; Mount Vernon Fire Ins. Co. v. Editorial America, S.A., 374 So.2d 1072 (Fla. 2d DCA 1979). By allowing the specific date mentioned in both paragraphs to control the general language, the provisions are reconciled and both given effect. See South Florida Beverage Corp. v. Figueredo, 409 So.2d 490 (Fla. 3d DCA 1981), cert. denied, 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982); Excelsior; Paddock.
We, accordingly, reverse and remand for the entry of a judgment finding that the contract was unambiguous and, due to an extension, continued in existence until January 1, 1979.
REVERSED AND REMANDED.
CAMPBELL, C.J., and RYDER, J., concur.