Stanley and Audrey FABRICANT, individually, and on behalf of others similarly situated, Plaintiffs,

v.

KEMPER INDEPENDENCE INSURANCE COMPANY, Defendant.

No. 06 80527 CIV HURLEY, 06 80527 CIV HOPKINS.

United States District Court, S.D. Florida.

Feb. 9, 2007.

Mark A. Wites, Alejandro Perez, of Wites & Kapetan, P.A., Deerfield Beach, FL, for plaintiff.

Mark L. Hanover, Jillian Gutman Mann, Sonnenschein Nath & Rosenthal LLP, Chicago, IL, and Marcy L. Aldrich, and Christopher S. Carver, of Akerman Senterfitt, Miami, FL, for defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HURLEY, District Judge.

THIS CAUSE is before the court upon the defendant's motion to dismiss. For the reasons stated herein, the court will grant the defendant's motion to dismiss the first amended complaint.

### BACKGROUND

Plaintiffs Stanley and Audrey Fabricant are residents of the state of New York. In addition to their home in New York, the Fabricants own a condominium in Delray Beach, Florida.

Defendant Kemper Independence Insurance Company ("Kemper Insurance") is an insurance provider. Kemper Insurance issued a homeowner's insurance policy to the Fabricants, policy number UG 202314, with a policy period running from March 3, 2005 to March 3, 2006. The policy generally insured against loss to the Fabricants' dwelling and other personal property. In addition, the policy contained a provision providing coverage for loss assessments charged against the insured by an association of property owners. The loss assessment provision itself provided coverage for up to $1,000 of the insured's share of a loss assessment, but the Fabricants purchased an endorsement for an additional $50,000 of loss assessment coverage. The policy specified that Kemper Insurance would generally pay only for that part of the loss over a $500 deductible. However, the policy also contained a special hurricane deductible in the amount of $2,800.

In October 2005, the Fabricants' condo community suffered damages to its common areas as a result of Hurricane Wilma. The Board of Directors of the condominium association imposed a special assessment in the amount of $2,225.45 against each member of the association, including the Fabricants. The Fabricants paid the special assessment and then filed a claim with the defendant for reimbursement. The defendant denied the request, explaining that the Fabricants' claim did not exceed the $2,800 hurricane deductible.

The Fabricants subsequently instituted this action. The operative complaint contains one count for breach of contract. The gravamen of the Fabricants' complaint is that the defendant erroneously applied the $2,800 hurricane deductible, rather than the general deductible of $500, to their claim. The complaint purports to seek relief on behalf of the Fabricants as well as a class of all persons nationwide that made similar loss assessment claims and for which the defendant applied the hurricane deductible.

### JURISDICTION

This court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). There is the requisite diversity of citizenship between the plaintiffs (and/or at least one member of the plaintiff class) and the defendant. Moreover, the aggregate amount in controversy exceeds $5 million.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

### DISCUSSION

#### A. Standard of Review on a Motion to Dismiss

A motion to dismiss is appropriate only when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For the purpose of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

#### B. Merits of Defendant's Motion to Dismiss

##### 1. General Principles of Insurance Law

 The parties agree that Florida law controls the disposition of this case. *See LaFarge Corp. v. Travelers Indemnity Co.,* 118 F.3d 1511, 1515 (11th Cir.1997) (citing *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court. *See Graber v. Clarendon Nat'l Ins. Co.,* 819 So.2d 840, 842 (Fla. 4th DCA 2002). The scope and extent of insurance coverage is defined by the language and terms of the insurance policy, and where the language of a policy is plain and unambiguous, the contract must be enforced as written. *See Siegle v. Progressive Consumers Ins. Co.,* 819 So.2d 732, 734–35 (Fla.2002).

 Policy language is considered ambiguous if the language "is susceptible to more than one reasonable interpretation, one providing coverage and the other

limiting coverage." *See Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000)). When language in an insurance policy is ambiguous, a court should resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage, rather than the reasonable interpretation that would act to limit coverage. *See id.* at 785–86. The courts have, however, cautioned that the fact that a word or phrase is undefined in an insurance policy does not necessarily render that term or phrase ambiguous and in need of interpretation by the court. *See State Farm Fire & Cas. Co. v. CTC Development Corp.*, 720 So.2d 1072, 1076 (Fla.1998).

 In arriving at a reasonable interpretation, the "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties—not a strained, forced, or unrealistic construction." *See Siegle,* 819 So.2d at 736. Courts should read insurance policies as a whole, endeavoring to give each of its provisions full meaning and operative effect. *See Auto–Owners,* 756 So.2d at 34. Moreover, "when a policy provision remains undefined, common everyday usage determines its meaning." *See Nateman v. Hartford Cas. Ins. Co.,* 544 So.2d 1026, 1028 (Fla. 3d DCA 1989) (citing *Security Ins. Co. of Hartford v. Commercial Credit Equip. Corp.,* 399 So.2d 31, 34 (Fla. 3d DCA 1981), *review denied,* 411 So.2d 384 (Fla.1981)); *see also Hrynkiw v. Allstate Floridian Ins. Co.,* 844 So.2d 739, 741–42 (Fla. 5th DCA 2003) ("When determining the meaning and scope of an exclusion clause or other provisions of an insurance policy, legal niceties, technical terms, and phraseology extracted from the vernacular of the insurance industry should never transcend the common understanding of the ordinary person. Therefore, the proper inquiry is not whether a legal scholar can, with learned deliberation, comprehend the meaning of an insurance policy provision, but instead, whether it is understandable to a layperson. [The court] will apply everyday meaning to the language of the instant policy and not strain for a contrary interpretation."). In general, coverage clauses in insurance policies are interpreted in the broadest possible manner to effect the greatest amount of coverage. *See Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So.2d 176, 179 (Fla.App. 5th DCA 1997). In contrast, exclusionary clauses are strictly construed, again in a manner that affords the insured the broadest possible coverage. *Id.*

## 2. The Defendant's Motion to Dismiss

 In this case, the defendant argues that the complaint should be dismissed because the policy clearly and unambiguously states that the $2,800 hurricane deductible is to be applied to the plaintiffs' instant claim for loss assessment. In contrast, the plaintiffs contend that the hurricane deductible applies to only a portion of the policy, and that the $500 standard deductible applies to any and all claims made pursuant to the loss assessment provision. The parties do not dispute that a hurricane caused the damage to the common areas of the plaintiffs' condo community. Rather, the legal question to be decided by the court is whether the defendant correctly applied the hurricane deductible to the loss assessment claim made in this case.

In order to answer this question, the court must examine the language and terms of the policy itself. The declarations page of the policy states that covered losses are subject to one of two specified deductibles: a standard policy deductible

of $500 or a hurricane deductible of $2,800. The policy defines the hurricane deductible and its applicability in an endorsement, which generally provides that the defendant will apply the hurricane deductible to covered losses caused by a hurricane.[1]

The policy at issue is divided into several sections. The first section, entitled "Section 1—Property Coverages," outlines the scope of property coverage provided by the policy. Section 1 is further subdivided into different coverage subsections. In particular, "Coverage A" deals with the insured's dwelling, "Coverage C" considers the insured's personal property, and "Coverage D" examines loss of use. "Section 1—Property Coverages" also contains a subsection entitled "Additional Coverages." The loss assessment provision that is the subject of this case is located within the "Additional Coverages" subsection.

The plaintiffs contend that the "Additional Coverages" section is not a part of section 1. Further, because the hurricane deductible explicitly states that it applies to "loss or damage payable under Section 1—Property Coverages," the plaintiffs posit that the hurricane deductible is not applicable to any claims made pursuant to the "Additional Coverages" subsection, including the loss assessment provision. The plaintiffs buttress their argument that the "Additional Coverages" section is not a part of section 1 by pointing to the declarations page, which does not list "Additional Coverages" under section 1. Additionally, the plaintiffs postulate that the "Additional Coverages" section protects interests that are separate and distinct from the type of coverage provided by sections 1(A)-(D).

The plaintiffs' arguments are without merit. A close reading of the policy makes clear that the hurricane deductible is to be applied to all losses payable under "Section 1—Property Coverages" that occur as a result of a hurricane. The "Additional Coverages" policy section, of which the loss assessment provision is a part, is clearly and unambiguously included as a subsection within "Section 1—Property Coverages." Moreover, although the "Additional Coverages" section is not explicitly delineated on the declarations page, Florida courts have cautioned that declaration pages should not be read in isolation. *See St. Paul Guardian Ins. Co. v. Canterbury School of Florida,* 548 So.2d 1159, 1161

---

1. The hurricane deductible endorsement reads, in part:

 A. Loss by Windstorm During a Hurricane
 As respects Paragraph C. Hurricane Deductible, coverage for loss or damage caused by the peril of windstorm during a hurricane which occurs anywhere in the state of Florida, includes loss or damage to the inside of a building or the property contained in a building caused by rain, snow, sleet, hail, sand or dust if the direct force of the windstorm damages the building, causing an opening in a roof or wall and the rain, snow, sleet, hail or dust enters through this opening.

 . . . . .

 C. Hurricane Deductible
 1. We will pay only that part of the total of all loss or damage payable under Section 1—Property Coverages that exceeds the

 hurricane percentage deductible stated in this endorsement.
 The hurricane percentage deductible amount is calculated by applying the hurricane percentage deductible shown above to the Coverage A Limit of Liability for HO 00 03 (Dwelling) policies or the Coverage C Limit of Liability for HO 00 06 (Condominium) policies to which this endorsement is attached at the time of the loss of damages. A minimum deductible of $500 applies.
 2. No other deductible in the policy applies to loss or damage caused by windstorm during a hurricane. Refer to the policy declarations for the deductible that applies to windstorm loss or damage if the circumstances of the loss described above do not apply.
 *See* First Amended Complaint, Exhibit A.

(Fla. 2d DCA 1989). Here, the omission of the "Additional Coverages" section from the declarations page is insufficient to demonstrate that the parties intended to distinguish that section from the rest of section 1 for the purposes of applying the hurricane deductible, especially when the court considers the policy as a whole and gives effect to each of its provisions. *See id.; see also Treasure Salvors, Inc. v. Tilley*, 534 So.2d 834, 836 (Fla. 2d DCA 1988) (in construing a contract, courts must look to the entire document, give effect to every provision, and reconcile apparent inconsistencies if possible); *Hoffman v. Robinson*, 213 So.2d 267, 268 (Fla. 3d DCA 1968) (legal effect of contract must be determined from words of entire contract and court may not violate the clear meaning to create an ambiguity). Perhaps most importantly, the text of the hurricane deductible endorsement specifically states: "No other deductible in the policy applies to loss or damage caused by windstorm during a hurricane." Reading the policy as a whole, it is apparent that the $2,800 hurricane deductible applies to the plaintiffs' loss assessment claim, and the court declines to adopt the plaintiffs' strained interpretation of the policy. *See Siegle*, 819 So.2d at 736; *Auto–Owners*, 756 So.2d at 34; *see also General Star Indem. Co. v. W. Fla. Village Inn, Inc.*, 874 So.2d 26, 30–31 (Fla.App. 2d DCA 2004) (mere fact that a specific policy provision could have been worded differently does not create an ambiguity when the insurance policy as a whole is clear). As a result, the court will grant the defendant's motion to dismiss and dismiss the plaintiffs' complaint in its entirety.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. The defendant's motion to dismiss [DE # 8] is **GRANTED**. The plaintiffs' first amended complaint is **DISMISSED** in its entirety.

2. The Clerk of the Court is directed to **CLOSE** this case.

3. Any motions not otherwise ruled upon are **DENIED** as moot.